—————o◄◈►◄—————

## BURR vs. NORTON.

The statute which provides that whenever a jail shall be used as a county work-house, the keeper of the jail shall be the keeper of the work-house, (Rev. Stat. tit. 43, ch. 3, §59,) implies that the deputy jailer shall be the keeper of such work-house, and consequently under the control of the sheriff.

The dismissal by the sheriff of a keeper of a jail so used, from the office of deputy jailer, is a dismissal from the office of keeper of the work-house.

It was not the intention of the legislature, in further providing in said act, that the judge of the county court and the county commissioners, if they see cause therefor, may appoint an assistant master or keeper of such work-house, to authorize the taking from the sheriff of the supervision and control of such work-house, under color of appointing an assistant to his deputy.

Where a county jail was used as a work-house, and the under-keeper of the jail, who was also the keeper of the work-house, was dismissed from his office by the sheriff, and the county commissioners afterward appointed him assistant keeper of the work-house; it was held, that by virtue of such appointment, he had no authority over the work-house in opposition to the sheriff.

Whether since the office of judge of the county court has been abolished, the county commissioners can alone appoint an assistant keeper of a work-house : Qu?

On the refusal of such under-keeper, when so dismissed by the sheriff, and subsequently appointed by the county commissioners, to deliver to the sheriff, exclusive possession of such jail, and of the books and papers belonging to the work-house, held, that a writ of *mandamus* would lie to compel him to render such possession.

Where a part of such jail had been occupied as a dwelling by the jailer and his family, in connection with certain land belonging to the county and contiguous thereto ; it was held, that it was not necessary to resort to an action of disseisin to recover possession of such land, and the part of the jail so occupied

THIS was a petition for a *mandamus*, preferred by Harris Burr against Joseph W. Norton, requiring the defendant to deliver to the plaintiff, who was sheriff of the county of Middlesex, the keys and papers belonging to the common jail of said county, situated at Haddam, and the control and custody of the prisoners therein confined, and to vacate and surrender possession of the whole of said jail, including a part of the same, occupied by the defendant as a dwelling for himself and his family.

The defendant appeared and showed cause against the issuing of the writ of *mandamus;* and at the term of the superior court, holden in February, 1856, the following facts were found, and the questions of law arising thereon, reserved for the advice of this court.

The petitioner on the second day of June, 1854, appointed the respondent under-keeper of the common jail of the county, situated at Haddam; which appointment was approved by the county commissioners for said county, on the 19th day of June, 1854. Norton thereupon, took the charge of said jail as its under-keeper, and had full possession of all the books and papers thereto belonging, and the keys thereof, until the 22d day of October, 1855.

From said 2nd day of June, until the petition was brought, said jail was used as a county work-house, according to the provisions of the statute law of this state\*; and during all

---

\* The 17th, 56th and 59th sections of the act concerning prisons, are in the following words.

" SECT. 17. The sheriffs, in the several counties, shall have the charge and custody of the jails in their respective counties, and be the keepers of them; and may appoint under them such keepers of said jails as they shall see fit, which appointments shall not be effectual, until approved by the county commissioners in their respective counties; and said sheriffs shall be responsible for all damages that any person shall sustain, by the escape of any prisoner out of such jails, through the fault or connivance of such keepers, or of any other person having the charge of such jails, under such sheriffs, and also for all other faults and negligences of such under-keepers, appointed by them, in any matters respecting their trust."

" SECT. 56. Whenever any jail in this state shall have been provided with suitable and adequate accommodation appurtenant thereto, to be used as a county work-house, or house of correction, the judge of the county court and

said time, Norton, as the keeper of said jail, was the master and keeper of said work-house, and had the charge of all persons committed to said work-house, and the possession of the books and papers thereto belonging; but Norton, before said 22d day of October, 1855, was never in any other manner appointed master or assistant master of said county work-house.

Said jail is connected with, and part of, a building in which is a tenement used by the jailor as a dwelling for himself and his family. The principal portion of said building used as a prison, consists of a large room containing twenty cells in which prisoners are confined, situated in two tiers one above the other; one of the chambers in the part used as a dwelling, is used as a debtor's room, and another chamber is used for the confinement of female prisoners. All these rooms and said cells are secured by locks that may be locked and unlocked by two keys, each being a duplicate of the other. The persons committed to the county work-house and confined in said prison, have been chiefly confined in the lower tier of said cells, and those committed to said jail have been chiefly confined in the upper tier of cells during the time the respondent was jailor as aforesaid. The large room above mentioned is the place where the work by the prisoners in the

the county commissioners of the county, in which such jail shall be situated, shall certify the same under their hands, or the hands of a majority of them, and shall cause such certificate to be recorded in the records of such county, and after such certificate shall have been so made and recorded, it shall be lawful to commit to such jail, all persons by law subject to imprisonment in such county work-house, or house of correction, in accordance with the several provisions hereinafter contained."

"SECT. 59. The keeper of the jail, approved as is provided by this act, shall be the master or keeper of such work-house, or house of correction, and said judge and county commissioners may, if they shall see cause therefor, appoint an assistant master or keeper of such work-house, or house of correction, and may prescribe the duties to be performed by them respectively, and said master or keeper, and said assistant master or keeper, when required by said judge and county commissioners, shall respectively give bond, with surety, to the treasurer of the county, for the faithful performance of the duties of his office, and shall be subject to be removed from his office, by said judge and county commissioners, when they shall judge that there is sufficient cause for such removal."

work-house is performed, and the room in which the prisoners in said jail are confined when not in their cells; neither tier of said cells, or any cell therein, can be approached except through said room. Said building may be used as a jail and also as a county work-house, while each department is under the direction and control of different persons, but is not so constructed as to be used as conveniently, or safely, as it could if both departments were under the direction and control of the same persons. Since July 1st, 1854, there were a greater number of persons confined in the county work-house than in the jail; during all said time, a number of persons were confined in each department of said prison. The county is the owner of certain land contiguous to said building, and which is used in connection therewith. On the 22d day of October, 1855, Burr dismissed Norton from the office of under keeper of said jail, and delivered to him a written discharge, a copy of which was, on the 31st day of October, 1855, lodged with the clerk of the superior court for said county of Middlesex, to be recorded; on said 22d day of October, Burr requested Norton to give him the keys and papers belonging to said jail and work-house. Norton then delivered to Burr, one of said duplicate keys, and all the papers belonging to the jail, but declined to deliver the other duplicate key or any of the papers belonging to, or connected with said work-house; in a short time thereafter, on the same day, Burr returned said papers and said key, so by him received, to Norton, and requested him to keep the same until he should see him again, but on Norton's request, Burr refused to take back said written discharge.

On the 24th day of October, 1855, the county commissioners for the county of Middlesex, without any action of any judge or any court, appointed said Norton assistant master or keeper of the work-house in Haddam, until the 1st day of June, 1856, and also constituted him agent for said county, and authorized him as such agent, to conduct the suits pending for, and against said county, and for that purpose put into his possession the books and papers of said county. On the 30th day of said October, said county com-

missioners and Norton, entered into an agreement in writing, respecting the duties by him to be performed as such assistant master, and Norton after the 24th day of October, 1855, exercised the duties of assistant master of said work-house, under said appointment and agreement, and kept charge of the books and papers of said county and the prisoners in said work-house, and discharged all his duties to the satisfaction and approval of said county commissioners. On the 29th day of October, and on the 5th day of November, 1855, Burr demanded of Norton, all the keys and papers of said jail, and insisted that Norton should surrender the same together with the possession of said jail, and the custody of the same and the prisoners therein confined, to him. Norton, on both said occasions, offered to Burr one of said duplicate keys and the papers connected with the jail and the custody of the prisoners therein confined, but refused to surrender the other duplicate key, and the exclusive possession of said jail, and claimed that he was entitled to hold the same, for the purpose of discharging his duties as assistant master of said work-house. On the 20th day of November, 1855, Burr demanded of Norton, the keys and papers of said jail, together with the possession of every part of said building and premises. Norton again offered to Burr, one of said duplicate keys, the papers belonging to said jail, and the custody of the prisoners therein confined, but refused to surrender the other duplicate key, the books and papers belonging to the work-house, or so much of said prison, as was necessary for him to use as a county work-house, or for the custody of the persons confined in said work-house, the dwelling by him occupied, or any portion of the land connected therewith. Norton, in refusing to surrender said duplicate key, the books and papers belonging to the work-house, so much of said prison as was necessary for that purpose, the dwelling and land by him occupied, and belonging to said county, and in the other proceedings touching the same acted under the express orders and requirements of said county commissioners. On the 14th day of November, 1855, Burr, as sheriff, appointed one William Chapman, keeper of the

jail in Haddam, and gave to the county commissioners, an appointment in writing of Chapman, for their approval; but Chapman, on being informed by said commissioners, that Norton was assistant master of said work-house, and as such, was entitled to have the use and occupation of the dwelling attached to said building, and the exclusive charge of said work-house, declined to receive said appointment; and Burr then withdrew the same from the consideration of said commissioners before they had come to any result thereon. Burr was, at all times, ready to take charge of said building as the keeper of said jail, and the master and keeper of said work-house in person, until he should be able to procure some suitable person for that purpose, whenever said premises should be vacated by the respondent, but he made no other provision for an under keeper of said jail than the appointment of Chapman.

*Ingham* and *W. D. Shipman*, for the plaintiff.

1. In this state, the sheriff is the keeper of the jail, and as such, is entitled to the sole custody and control thereof. The statute has made him responsible for the escape of the prisoners, and with great propriety has given him authority over the building in which they are confined. Rev. Stat., 730, 731.

2. The sheriff has power to appoint under keepers or deputy jailors, subject only to the approval of the county commissioners, to act for him, and for whose negligent, tortuous, and improper acts, he is liable. Their acts are his acts. Rev. Stat., 730, 731. *Brown* v. *Huntington*, 3 Conn. R., 423. *Huntington* v. *Williams*, 3 Conn. R., 427.

3. As the sheriff is held responsible for the acts of his under keeper, or deputy, the law has wisely given him the sole power of dismissing him at his pleasure. Rev. Stat., 793.

4. In this case, the sheriff, having exercised that power by dismissing the respondent, the latter is no longer keeper of the jail, and should not be permitted to perform its duties.

5. As the respondent was master or keeper of the work-house, only by virtue of his office of under keeper of the jail,

his dismissal by the sheriff from the latter office, was equally a dismissal from the former.

6. The appointment of the respondent by the county commissioners, as assistant master of the work-house, was void, and conferred no authority upon him to act in that capacity; first, because, as there was no master of the work-house, there could be no assistant master; and secondly, as the power of the appointment was lodged in the judge of the county court and the county commissioners *jointly*, both must concur in the act of the appointment. Where the law vests a power of appointment in two distinct and independent agents, or tribunals, neither can legally or effectively exercise the power alone, but both must concur.

7. The sheriff being liable for the escape of all the prisoners in all the different departments, is entitled to the possession of every part of the building, both for his own protection, and for the convenience and protection of the deputy jailor.

8. The power given to the county commissioners over the county property, is not absolute, but is limited by and to be construed in connection with the rights and powers of the sheriff. The statute prescribing the forms and duties of the county commissioners, in regard to the county property, should be so interpreted as to be consistent with those of the sheriffs touching the prisoners.

9. Here being a clear right and no ordinary mode of legal redress, the remedy by *mandamus* is appropriate and apt to the case. Tapping on Mandamus, 62, 64. *People* v. *Corporation of Brooklyn*, 1 Wend., 318. *People* v. *Chenango justices*, 1 Johns. Ch. Ca., 179. *Taylor* v. *Henry*, 2 Pick., 397. *Sudbury* v. *Stearns*, 21 Pick., 148. *Walter* v. *Belding*, 24 Verm., 58. *St. Luke's Church* v. *Slack*, 7 Cush., 226. *Clayton* v. *Carey*, 4 Maryland, 26.

*Chapman* and *Mc Curdy*, for the defendant.

1. The building described as the jail, is devoted to two separate purposes, and under two sets of officers, entirely distinct from, and independent of each other.

Everything connected with the use of it, as a jail proper, the respondent has always been ready and willing, and has offered to deliver to the sheriff. So far as, since the revocation of his appointment, he has acted as jailor, the duty has been forced upon him, by the sheriff, who is therefore estopped from complaining. With respect to the occupancy as a work-house, with the keys, papers, possession and control of the prisoners, pertaining to it as such, *these* he is under no obligation, and has no right to surrender to the sheriff. These uses can be had by each party at the same time. But so far as there is a conflict, the right of the work-house keepers must be paramount.

2. The appointment of the respondent by the county commissioners alone is valid. That part of the law which required the concurrence of the county court was repealed by the abolition of that court. If the validity of the appointment were questionable, this is not the mode of trying the question. U. S. Dig., 1848, 269, No. 23. 5 Hill, 616. 3 John. Ca., 79. 5 Hill, 628. 2 T. R., 259.

3. The dwelling-house and grounds, pertain especially to the work-house, and are under the control of the county commissioner; and the respondent holds under them. The county must provide for a jail, but needs not a house for the jailor. The mode of obtaining possession of real estate wrongfully withheld is either by action of ejectment or summary process, or under some circumstances an injunction, and not by *mandamus.*

4. A writ of *mandamus* is not a matter of right, but of discretion, and will be issued only when the applicant has a clear legal title, which the respondent clearly violates, and when there is no adequate remedy. 1 Sw. Dig., 578. 1 Conn. R., 512.

HINMAN, J. This is an application for a *mandamus* by the sheriff of the county of Middlesex, to restore the applicant to his control of the county jail, which is withheld by the defendant, a former deputy jailor, who was removed from office by the applicant. A *mandamus* lies to compel the admission

or restoration of a party to any office or franchise of a public nature.   1 Sw. Dig., 563.    *Fuller* v. *Plainfield Aca. School,* 6 Conn. R., 532.   It is a prerogative writ, and was introduced to prevent disorder from a failure of justice, and defect of police; and ought therefore to be used on all occasions where the law has established no specific remedy, and where in justice and good government there ought to be one.    *Rex* v. *Barker*, et. al., 3 Burr., 1262.   If, as seems to be the case in England, it will be granted to restore an alderman to precedency, and an attorney to practice in an inferior court, it surely ought to protect the sheriff in the functions and emoluments of his office.   But it is contended that, as the statute authorizes the county jails, to be used as county work-houses in certain cases, the jail is therefore devoted to two distinct purposes, under two sets of officers, who are independent of each other.   We think this a perversion of the object of the legislature, in providing for the establishment of work-houses and houses of correction.   The statute in relation to jails, p. 730, gives the charge and custody of them to the sheriffs.   They alone are responsible for the safety of prisoners committed to them ; and it is therefore right that they should have the exclusive custody of them, which they can not have without the control of the jails.   This is necessary to preserve good order.   No one could safely accept the charge of the jail and the prisoners, without it ; and the right of another independent officer to use the same jail for a different class of prisoners, is inconsistent with such control, and was never intended to be sanctioned.   When, therefore, it is provided that the keeper of the jail, shall be the keeper of the work-house, it obviously refers to the deputy jailer, who is appointed by the sheriff, and must necessarily be *his* deputy; and being his deputy, he is necessarily under his control in the discharge of his duties.   The employment of the jails as work-houses, is intended to be subordinate to their more usual employment, as is apparent from the whole scope of the statutes.   And where there is a conflict, the authority of the sheriff must prevail.   Subject to the approval of the commissioners, the sheriff appoints the deputy jailers.

Probably it was not anticipated that he would appoint improper persons, or that the commissioners would refuse to approve them if proper persons were appointed. Such a contingency therefore was not provided for. But this gives the commissioners no authority to appoint any other than the deputy jailer as the keeper, for the statute is imperative. " The keeper of the jail, approved as is provided by this act, shall be the master or keeper of such work-house." The jailer therefore, is *ex officio* made the keeper of the work-house, and as he is appointed by the sheriff, whose deputy he is, we think it was intended that the sheriff should control him, not merely as the keeper of the ordinary prisoners, but as the keeper of the work-house prisoners, so long as the jail and the work-house remain the same. This control can not be taken from the sheriff, under color of refusing to approve a deputy appointed by him. The sheriff must continue to appoint until some one is approved, and in the mean time, he must, from the necessity of the case, take charge of the jail, and all the prisoners in it, so long as they remain there.

It has not been questioned that the sheriff had power to dismiss his former deputy, and as he was the keeper of the work-house, only by virtue of his being deputy jailer, his dismissal from that office was of necessity a dismissal from that of keeper of the work-house.

But it is claimed that the appointment of the defendant as assistant keeper by the county commissioners was valid, and gave him authority as such assistant keeper to take charge of the work-house.

The authority to appoint an assistant, is given in the same section that declares that the keeper of the jail shall be the master of the work-house, (Stat. p. 741, § 59,) and, of course, is founded upon the supposition that there is such a master to be assisted in the discharge of his duties. This master must be the deputy of the sheriff, and as such subject to his supervision and control; and the statute never intended to authorize this supervision and control, to be taken from him, under color of the appointment of an assistant to his deputy.

Burr *v.* Norton.

Had there been a master keeper at the time of this appointment, assuming it to be a valid appointment, it might plausibly be said that from necessity, the assistant would hold over on the death or resignation of the master. But even then he must be subordinate to the sheriff; for we should require a very clear expression of the will of the legislature, before we should believe that two officers, each independent of the other, were intended to be placed over such an institution as a public prison. We do not feel called upon, therefore, to determine whether the commissioners, since the office of judge of the county court has been abolished, can alone appoint an assistant, being satisfied that under the circumstances of this case, the defendant has no authority under it to exercise power in opposition to the sheriff.

But a part of the jail has been used as a dwelling for the jailer and his family, and there is some land contiguous to the building, and used in connexion with it, which, with the jailer's house, it is gravely claimed is county property, the possession of which, must be sought for in an action of disseisin. No argument can be necessary in answer to such a claim. If the public, through the public officers, can not obtain the control of the jails from out going keepers until after the end of an ordinary law suit, it is time that a remedy should be provided for such vexation. There can be no foundation for this claim; and if there is any property which is not a part of the jail or appurtenant to it, the finding does not show it. We therefore advise the superior court to grant the *mandamus* asked for.

In this opinion, STORRS, J. concurred.