## THE STATE OF NEVADA EX REL. WILLIAM HOOTEN et als. v. D. C. McKINNEY.

CONSTITUTIONAL CONSTRUCTION.  Section two of the Act of 1869, providing for the
    transfer of certain records and suits from the county seat of Lander County to
    the county seat of White Pine County, (Stats. 1869, 137) though local and
    special in its nature, does not provide for changing the venue in any case, and
    is therefore not in conflict with section twenty of article four of the Consti-
    tution.

CHANGE OF VENUE, WHAT.  To change the venue in a case is to direct the trial to
    be had in a different county from that where the venue is laid; but if a new
    county be created out of a portion of an old one, an Act directing suits relating
    to property in the new one to be tried in the new county is not an Act chang-
    ing the venue of such suits.

TRANSFER OF RECORDS FROM LANDER TO WHITE PINE COUNTY.  Where the County
    of White Pine was created out of a portion of the County of Lander, and cer-
    tain records and suits relating to property in the new county were directed by
    legislative act to be transferred from the county seat of Lander County to the
    county seat of White Pine County, and to be tried in the District Court of the
    Eighth instead of the Sixth Judicial District: Held, that such Act was not an
    Act changing venue within the meaning of the constitutional prohibition of a
    legislative change of venue.

STATUTORY CONSTRUCTION—TRANSFER OF JUDICIAL RECORDS.  The Act of 1869,
    providing for the transfer of certain records and suits from Lander to White
    Pine County, (Stats. 1869, 137) is not an Act regulating the practice of Courts
    of Justice.

MANDAMUS.   Under the Act of 1869, providing for the transfer of certain records and suits from Lander to White Pine County, (Stats. 1869, 137): *Held*, that it was the duty of the County Clerk of Lander County to transfer the records and suits therein directed to be transferred, and that he could be compelled to do so by mandamus.

APPLICATION to the Supreme Court for mandamus.

The relators, William Hooten, F. W. Clute, and J. R. Withington, were defendants in an ejectment suit brought against them by M. Monahan and John P. Kelley, for certain land in the town of Hamilton, the county seat of the new County of White Pine.   It was the records and papers in that suit which they desired to have transferred from Austin, the county seat of Lander County.

From the answer of the respondent, it appears that the relators had made a motion in the Sixth District Court for a transfer of the case, on the same grounds as those presented in this application; and that on such motion it had been held that the Act of 1869, providing for such transfer, was unconstitutional and void, and the transfer refused.   The case had then been tried at Austin as to the defendant Clute, and judgment rendered against him, and a motion by him for a new trial was pending in the Sixth District Court at the time of this application to the Supreme Court.

*Clarke & Wells*, for Relators.

The Act of March 5th, 1869, authorizing the transfer of certain suits, etc., is not a "special," or "local" law, "changing the venue in civil and criminal cases":

1st.  Because it is an Act affecting the whole public, and not particular individuals.

2d.  Because it is an enforcement of the general policy of the law, and makes no exceptions to that general policy.

3d.  Because it was a necessity resulting from the creation and organization of White Pine County, correcting all incongruity produced in the operation of the general laws of the State by the creation of said county, the power to correct which flowed from the power to create.

4th.  Because an Act directing the transfer of judicial records

Hooten *v.* McKinney.

from an old county where the suit is pending, to a new county where the subject matter is situated is, in no sense, a "change of venue," as inhibited by the Constitution.

The term "local," has really no place in this discussion. It is scarcely possible to conceive a local law "providing for changing the venue in civil and criminal cases." "Special" laws changing the venue necessarily affect individuals—not localities. When we give full scope and efficiency to the term "special," we find the term "local" left wholly without pertinent application to the clause in hand. It has no more direct application to the clause, "providing for the change of venue in civil and criminal cases," than to the clause "granting divorces," or "changing the names of persons," nor than the term "special" has to the clause "regulating the practice in Courts of Justice."

It is, then, with the term "special" we have to deal. What are we to understand by a special law providing for changing the venue in civil and criminal cases? Manifestly this: An Act of the Legislature directing the transfer of a particular cause, from the county where the subject matter of the action lies or the parties to the action reside; this was the evil sought to be prevented. The Act of the Legislature of California to change the venue in Horace Smith's case, is illustrative of the point; and we have reason to believe that very Act led to the insertion of the clause, in our fundamental law, under consideration. Clearly, the Act is not *special*, in this or any just sense, nor is it fraught with any of the evils sought to be obviated. On the contrary, it is in accord with the spirit of the law and general policy of the State, and relieves from an exceptional hardship, wholly and purely incident to the creation of White Pine County, by putting causes for trial into the county where the parties reside and the subject matter is situated, the county where the general law requires the trial to take place; and does not apply to any particular case or individual, but embraces all cases and persons falling within its scope.

The venue of an action is the locality, neighborhood, or county, where the subject matter of the suit is situated, or, in personal actions, wherein the parties, or some of them, reside. While it is in some sense the place of trial, it is by no means always compre-

hended by the place where a cause is tried. It is a law term of fixed and well-understood significance. (3 Bl. Com. 294; Gould's Pleading, Ch. 3, Sec. 102; Steph. Plead. 398; 3 Bouv. Inst. 210.)

This is the sense in which the term is used in our Constitution. The intention was to prevent the Legislature from removing a cause from the county where the fact transpired, or the subject matter was situated, to secure, among other things, that time-honored right of trial by jury of the vicinage.

*Garber & Thornton,* for Respondent.

The Act of March 5th, 1869, is in direct conflict with the provisions of the Constitution that the Legislature shall not pass local laws regulating the practice of Courts of Justice and providing for changing the venue in civil and criminal cases. It is " local " and " special," inasmuch as it refers to only two counties, operating in them alone, and not over the entire State, and as it refers to those cases only pending in the District Court of the Sixth Judicial District, of a certain class, and not to other cases of the same class pending in the other District Courts of the State. (*State ex rel. Clarke* v. *Irwin,* April Term, 1869.)

Again, the applicants for this mandamus did not avail themselves of the privilege conferred by the general law to have the case transferred from Lander to White Pine County, having failed to demand the transfer before answering. (Stats. 1869, 199, Sec. 21.)

In the action of *Monahan and Kelley* v. *Clute, Withington, and Hooten,* the three defendants answered separately, and demanded separate trials; and a trial in the Lander District Court has been had between the plaintiffs and defendant Clute, and judgment rendered for plaintiffs. Clute then cannot join in this application with the other defendants, his case having been tried, and it being required in application for change of venue that all defendants unite.

By the Court, LEWIS, C. J.:

The relators ask the issuance of a mandamus by this Court to compel the defendant, who is the County Clerk of the County of

Lander, to transfer certain records to the Clerk of the new County of White Pine. The application is founded solely upon section two of an Act entitled "An Act authorizing the Transfer of certain Records and Suits from the County Seat of Lander County to the County Seat of White Pine County," which reads in this wise : "All suits now pending in the District Court of the Sixth Judicial District, which in any way appertain to property—real, personal, or mixed—belonging or being in White Pine County, and all actions for the recovery of any debt, claim, or demand whatsoever, between citizens of White Pine County, shall, (if then undetermined) at least ten days before the first day of the first term of the District Court of the Eighth Judicial District, be by the County Clerk of Lander County transferred, duly and legally certified, to the County Clerk of White Pine County ; and all suits so transferred shall be, by the County Clerk of said White Pine County, filed in his office, and entered in the calendar of the aforesaid first term of said District Court : *provided*, where both the plaintiff and defendant to any suit shall file a written statement with the County Clerk of Lander County, requesting that the suit to which they are parties may be determined in said Sixth Judicial District—then and not otherwise, said suit or suits shall not be transferred as herein provided."

Here the duty is unmistakably imposed upon the defendant to transfer the records in question in this proceeding ; but it is interposed in his behalf, that the section above quoted is in conflict with a portion of section twenty, article four, of the fundamental law of the State, which declares that the Legislature shall not pass "local or special laws". * * * " providing for changing the venue in civil or criminal cases." This Act, it is argued, is local and special, and provides for changing the venue in the cases directed to be transferred to White Pine County—hence, it conflicts with constitutional inhibition here referred to, and is void.

Whilst we agree with counsel for the defendant that the law in question is local and special, it does not in our judgment change nor provide for changing the venue in any case. To ascertain whether our conclusion upon this point be correct or not, it may be necessary to inquire, what is here meant by the venue of a case ? Burrill defines the word " venue " as " a neighborhood ; the neigh-

borhood, place, or county, in which an injury is declared to have been done, or fact declared to have happened." And again: "The county in which an action is intended to be tried, and from the body of which the jurors who are to try it are summoned. To change the venue, is to direct the trial to be had in a different county from that where the venue is laid." The venue," says Bouvier, "is the county from which the jury are to come who are to try the issue." This is doubtless a correct definition of the word as used in the Constitution—that is, it is the county wherein the action is brought and the jury are to be obtained. The action in which the relators are interested and which it is claimed should, under the Act in question, be transferred to the County of White Pine, was instituted for the purpose of recovering possession of certain real estate located in what was known as Lander County at the time the action was commenced, but within the limits of what is now White Pine County, which was erected out of territory formerly within the boundaries of Lander. The old County of Lander, therefore, at the time the Act in question was passed, was the proper venue of the action. To transfer it to any county beyond the territorial limits of that county, would undoubtedly be held a change of venue. But can the transfer of a case, from one locality of a county to another locality within the same county, be considered a change of venue? Certainly not—because the trial is still to be had within the same venue—that is, within the same county.

Let it be supposed that a District Court be held at two or more places in the same county, it would hardly be claimed that the venue of an action, which might be transferred from one of such places to another, would be changed. No geographical division of the State less than the counties is recognized in ascertaining or determining the venue or place of trial of an action instituted in the District Courts—hence, there can be no change of the venue, unless the case be transferred beyond the territorial limits of the county where it may be for trial at the time of its removal. If instead of transferring it from one locality in the same county to another, the county be divided in two or more counties, can it be any more a change of venue to transfer a case by the same Act

making such division from one of such counties to another, than to transfer it from one locality to another in the same county? There is substantially no difference between the two cases—for in either the action would still be triable within the same territorial limits.

At the time the Act under consideration was passed, the law creating the County of White Pine had not taken effect—hence, the proper venue of the action was the old County of Lander, which included all of the territory embraced in the new County of White Pine. Had the Legislature simply ordered the transfer of the case from Austin, the county seat of Lander County, as it stood before the division, to Hamilton, (which is now the county seat of White Pine County) without dividing the county, it will hardly be claimed that the venue would be thereby changed. But there has been no time when the County of Lander, with its present limits, was any more the proper venue of the action than the County of White Pine—because, legally although not practically, the action was transferred to that portion of the County of Lander which is now known as White Pine before the division of the county —the Act ordering the transfer taking effect on March 2d, while the Act creating the County of White Pine did not take effect until a month later. Suppose the Legislature, instead of dividing the County of Lander, had established an additional District Court within its limits, giving jurisdiction over a certain portion of the county only, (assuming for the present that the Legislature had the right to do so) and by the same Act transferred cases from the old to the new Court, it cannot, we think, be successfully maintained, that such transfer would constitute a change of venue of the cases so transferred—for, although changed from one Court to another, still they would remain within the same venue or county. Yet, the only distinction between that case and this, is that here the territory over which the new Court has jurisdiction, is created into a new county with a new name. However, the jury who are to try the issues must of necessity come from within the territorial limits of the county where the venue is originally laid—therefore, it seems to us, it remains within the same venue. If any territory, not included in the limits of the old county, were embraced within the new, or if at the time of the division or creation of the new county there

were no provision for transferring cases from the old county to the new, a very different question would be presented. Here, there is simply a division of a county, and prior to or at the time of such division, suits are transferred from one portion of such county to another, organized as a new county.

Such being our view, we conclude that the Act in question does not affect such change of the venue in the case mentioned in it as to make it obnoxious to the constitutional clause referred to. Nor can it be considered an Act "Regulating the Practice of Courts of Justice." It in no wise purports to regulate the practice of Courts or of any Court, but simply directs the transfer of records of certain suits from one Court to another. The Act being constitutional, the mandamus must issue as prayed for.