## AMOS A. EWING VS. M. L. TURNER.

1. MANDAMUS—*Title to Office*—*Mandamus* will not lie to try the title to a public office.

2. MANDAMUS—*Public Office*—It may be stated as a general rule in an action in *mandamus* that where a relator shows a *prima facie* title to a public office, he is entitled to the aid of *mandamus* to obtain possession of the books, records, insignia, paraphernalia and official belongings of such office; and in granting the writ, the court will not go behind such showing and try the title thereto.

3. OFFICE—*Removal*—*Commission*—When an incumbent of a public office is removed by the governor, acting under statutory authority giving him such power, and a successor is thereupon appointed and commissioned and duly qualified as required by law, the court, in determining who is entitled to the books, records, insignia, paraphernalia and official belongings of such office, will not go behind the last commission of the governor and try the title to such office.

4. SAME—The relator is not entitled to the aid of *mandamus* to obtain possession of funds in the hands of the territorial treasurer, when it appears that such relator has been removed by the governor and a subsequent commission has been lawfully issued for the same office to another, for the reason that in seeking to avoid the later commission, the relator necessarily puts in issue the title to the office, which cannot be tried by *mandamus;* and in the face of the later commission, the relator being unable to show a *prima facie* title to such office, the writ must be denied.

*Original Action in Mandamus, in the Supreme Court.*

This is an original action in *mandamus*, brought in the supreme court, by Amos A. Ewing, as treasurer of

the board of regents of the Agricultural and Mechanical college of the Territory of Oklahoma, against M. L. Turner, as territorial treasurer of Oklahoma Territory.

The petition prays for an alternative writ of *mandamus*, which was granted by Chief Justice Dale on the 26th day of January, returnable to the full bench on the 31st day of January, 1894.

All the facts are stated in the petition and affidavit and the return to the alternative writ.

The petition reads:

"Your relator respectfully represents to the court,

"1. That he is a citizen of the United States and a resident of the Territory of Oklahoma, and was, on and prior to the 26th day of January, 1893, and then, was and now is, in all things, qualified to hold the office of a member of the board of regents of the Oklahoma Agricultural and Mechanical college, as well, also, as treasurer of said board.

"2. That on or about the 26th day of January, 1893, he was duly appointed by the Hon. A. J. Seay, who was at that time the governor of the Territory of Oklahoma, as regent of the Agricultural and Mechanical college of the Territory of Oklahoma, situated at the town of Stillwater, in Payne county, Oklahoma Territory.

"3. That afterwards, to-wit: In the month of January, 1893, his said appointment was duly and legally confirmed by the council of said territory, at its regular session and a commission in due course of time issued to him as such regent of said college, a copy of which commission is hereto attached marked exhibit 'A' and made a part hereof.

" And your relator duly accepted said appointment and qualified as required by law, by taking and subscribing to the oath of office, required of officers in said territory.

"4. That afterwards, to-wit: On the 21st day of March, 1893, at a regular session of said board of regents of said college, he was duly and legally elected by said board as treasurer of the board of regents of

said Agricultural and Mechanical college; and thereupon after entering into such bond as was by said board required of him, and after said bond as such treasurer had been duly and legally accepted and approved by said board of regents, as well as the governor of the Territory of Oklahoma, he thereupon entered into said office of treasurer of said board, and continued and still continues to occupy said office as treasurer of the board of regents of said college; and he is now and at all times since has been the duly elected and qualified and acting treasurer of the said board of regents.

"5. That as such treasurer, and by virtue of his said office of treasurer of said board he is the custodian of all money, books, blanks and other paraphernalia belonging to the office of treasurer of said board of regents, and as such treasurer of said board, he is the custodian and entitled to all money belonging to said college, and is the general disbursing officer of said board of regents, and all debts and expenses of said college, including the salaries of teachers, officers and employees, as well as the current expenses of said college are paid, and can only be paid through him as such treasurer, upon the order of said board legally authorized by him.

"And as such treasurer he is entitled to the possession of all money belonging to said office, as well as all funds and money belonging to said college.

"6. That in the month of January, 1893, one Samuel Murphy was appointed treasurer of the Territory of Oklahoma, and in his capacity as treasurer and as such treasurer of Oklahoma, he received from the treasurer of the government of the United States, for the use and benefit, and as the funds belonging to said college to be used in defraying the general expenses of said college, through the treasurer of the said Agricultural and Mechanical College, the sum of $19,-000.00.

"7. That on or about the 17th day of January, 1894, the said Murphy resigned his said office of treasurer of the Territory of Oklahoma, and on the same day the Hon. William C. Renfrow, as governor of said territory, appointed the respondent herein, the Hon. M. L. Turner, as

treasurer of the said Territory of Oklahoma, and he thereupon entered upon his duties as treasurer of said territory, and the said M. L. Turner is the duly appointed, qualified and acting treasurer of said Territory of Oklahoma.

"8. That about the time the said Murphy resigned the office of treasurer of said territory, he turned over and delivered to the said Turner, respondent herein, as his successor in office, the said $19,000.00 which belonged to the said college ; and the said Turner has at this time, as treasurer of said territory, in his possession, said money belonging to said college, to-wit : the sum of $19,000.00, which he wrongfully and unlawfully retains from your relator as treasurer aforesaid.

"9. That on or about the 27th day of December, 1893, the said board of regents of said college, at a regular meeting of said board, in open session thereof, and in accordance to the rules and regulations of said board, by resolution legally passed and adopted, ordered and directed the treasurer of said territory to deliver and turn over to the treasurer of said board of regents, and for the use and benefit of said college, to be used in defraying the usual legitimate expenses of said college, the said sum of $19,000.00, which sum of $19,000.00 belonged to said college, and to the possession of which said money your relator as treasurer of said college was and is duly and legally entitled, a copy of which said order and resolution is hereto attached, marked Exhibit 'B' and made a part hereof.

"10. That on or about the 28th day of December, 1893, your relator as treasurer of said board of regents and in pursuance of the order of said board of regents, presented said order to the said Murphy as treasurer of said territory, and requested and demanded of him, the then and there treasurer of said territory, the said sum of $19,000.00; but the said Murphy disregarding his duties as treasurer of Oklahoma, as well as the interests of said college, refused and neglected to deliver and turn over said money to your relator, and has at all times since refused and neglected so to do.

"11. That on the 25th day of January, 1894, your relator, as such treasurer of said board of regents,

presented said order to the said Turner, and requested and demanded of him, as the treasurer of said territory, the said sum of $19,000.00 belonging to said college, and, as the treasurer of said board of regents, demanded said money for the use and benefit and to be used in defraying the legitimate expenses of said college.

"The said money being demanded by your relator of the said Turner for the purpose of using the same in carrying on the business of said college, and to defray the legitimate and legal necessary expenses of said college, in paying the teachers, officers and other employees of said college, as well as the current contingent expenses thereof.

"But your petitioner alleges that the said Turner, disregarding his duties as treasurer of the Territory of Oklahoma, and disregarding the rights of your relator as treasurer of said college, as well as the rights and interests of said college, and the rights and demands of the patrons of said college, and the people of the Territory of Oklahoma, he, the said Turner, respondent herein, wrongfully and unlawfully refused and still refuses and neglects to deliver and turn over said money to your relator, but unlawfully continues to hold the same in his own possession, and to withhold said funds from the legitimate and proper use to and for which it was intended and appropriated by law; all of which is contrary to law, and in violation of the rights of your relator, and the said college, as well as the people of the Territory of Oklahoma.

"12. And your relator further represents that by reason of the said refusal of the said Turner to deliver and turn over said money to your relator, which said money is now in his possession, the teachers and officers and other employees in said college will be deprived, and are now deprived, of the compensation which is now due, and will become due to them for their services, and the said college will be closed and suspended for want of funds to carry on the same, although a fund amply sufficient to properly sustain and carry on said college has been provided by law, and is now in the hands of said Turner as treasurer of said territory, and which funds he, the said Turner, wrongfully and unlawfully withholds and retains.

"13. Your relator further represents that by section 3 of an act of congress approved August 30, 1890, it is especially provided, that if by any action or contingency said funds be diminished, lost or misapplied, the same shall be replaced by the territory or state to to which it belongs, and until the same is replaced no subsequent appropriation shall be apportioned or paid to such state or territory. And your relator further represents that by the laws of the United States it is provided that all moneys remaining in the hands of the treasurer of the territory procured from the treasury of the United States for the use and benefit of said college, and which remains unexpended by said college on the 1st day of July of each year, is required to be returned to the treasurer of the United States as unexpended funds; and your relator further represents that if said Turner continues to withhold said funds from said college, and refuses to deliver and turn over the same to your relator as treasurer of said board of regents, to be applied to the payment of the legitimate expenses of said college as provided by law, the same will be lost to the said college and territory, and misapplied, and the Territory of Oklahoma will, by the act of congress aforesaid, be required to replace and repay the same to the treasurer of the United States, to the great damage of your relator, as well as the college aforesaid, and the patrons thereof, and to the people of the Territory of Oklahoma, for which they nor either of them would have any speedy or adequate remedy at law.

"14. And your relator further states that for all said wrongful and unlawful acts of said respondent, he is entirely without remedy at law unless it be afforded by the interposition of this court; and he therefore prays that a writ of *mandamus* may issue against the said M. L. Turner as treasurer of the Territory of Oklahoma, and that the said M. L. Turner, as such treasurer, be commanded to deliver said money, to-wit: the sum of $19,000, to your relator, as the treasurer of the Agricultural and Mechanical college of the Territory of Oklahoma, and that in the meantime he be enjoined and restrained from making any other use, or appropriation or disposition of said

funds, with such other and further relief as justice and equity may require.

To the alternative writ, respondent filed the following return :

" For return to the alternative writ awarded in this case, the respondent admits that he is the treasurer of the Territory of Oklahoma, and was at the time the demand of the relator, set out in the alternative writ, was made upon him.    That as such treasurer he has in his possession the sum of $19,000.00, which by act of congress he is required to pay over on demand, to the treasurer of the board of regents of the Agricultural and Mechanical College of Oklahoma.    That he is ready and willing to pay said money over on demand to the lawful treasurer of said board of regents, but he is unable to determine who is the lawful treasurer of said board.

"That it is admitted that the relator is a citizen of the United States, and of the Territory of Oklahoma. That he was, as alleged, in the alternative writ in this case, regularly appointed a member of the board of regents of the Agricultural and Mechanical College of this territory, on the 26th day of January, 1893 ; that he afterwards accepted said appointment, and duly qualified under it, and was afterwards duly and properly elected treasurer of said board, and accepted and duly qualified as such.    The respondent denies that relator is now. or was at the commencement of this proceeding, either a member of said board or its treasurer, and alleges the fact to be, that the said relator, together with all the other members of the said board of regents of the Agricultural and Mechanical College of the Territory of Oklahoma, on the 31st day of July, 1893, was removed from said board by the Hon. W. C. Renfrow, governor of the territory aforesaid, and the vacancies thus created were regularly filled by said W. C. Renfrow, governor, on the 4th day of August, 1893, by the appointment of John R. Clark, F. Carruthers, Henry E. Glazier, J. C. Caldwell and J. W. Howard, as regents of said college ; that all of said appointees last before named accepted said appointment and were duly commissioned and qualified as regents of said college by the governor of the

Territory of Oklahoma, on the 4th day of August, 1893; that a copy of the commission of the said F. Carruthers is hereto attached marked Exhibit 'A' and made a part of this return; that afterwards, to-wit : on the 5th day of August, 1893, said board of regents met and duly organized by electing John R. Clark president and secretary, and F. Carruthers as treasurer, a copy of the minutes of the said meeting is hereto attached marked Exhibit 'B,' and made a part of this return ; that afterwards said F. Carruthers duly qualified as treasurer of said board by making and presenting the bond as required by the said board, which bond was duly approved ; that since that date said F. Carruthers has been and now is claiming to be the duly qualified and acting treasurer of the board of regents of the Oklahoma Agricultural and Mechanical College. That said F. Carruthers, as treasurer of said board of regents, before the commencement of this proceeding, demanded of the respondent the money in his hands belonging to said college under the act of congress as aforesaid ; that the respondent cannot therefore, with safety to himself nor to said college, for the use of which he holds said money, pay said money on the demand of either of said claimants; but is ready to turn it over to such person as this honorable court, in a proper proceeding therefor, shall determine is the proper custodian of said fund."

"That respondent denies that the relator was, at the commencement of this proceeding, and is now, the treasurer of the board of regents and was and is disbursing agent of said college through whom the salaries of teachers and the officers of said college are now paid."

Exhibit "A" attached to said return reads as follows:

"WILLIAM C. RENFROW, GOVERNOR OF THE TERRITORY OF OKLAHOMA:

" *To All Who Shall See These Presents, Greeting:*

"Know ye: That, reposing special trust and confidence in the ability and integrity of F. Carruthers, I have appointed and do hereby commission him regent of Oklahoma Agricultural and Mechanical college, and do authorize and empower him to execute and fulfill

the duties of that office according to law, and to have and to hold the said office, with all the powers, privileges and emoluments thereunto appertaining unto him, the said F. Carruthers, until the adjournment of. the next session of the legislative council of the Territory of Oklahoma.

"In witness whereof, I have these letters to be made patent and the great seal of the territory to be hereunto affixed.

"Given under my hand at the City of Guthrie, the 4th day of August, in the year of our Lord one thousand eight hundred and ninety-three, and of the Independence of the United States of America the one hundred and eighteenth.

"By the governor.

(Seal).        "WILLIAM C. RENFROW, *Governor.*"

"THOMAS J. LOWE,
    *Secretary of the Territory.*"

Exhibit "B" attached to said return, reads as follows:

"GUTHRIE, Okla., Aug. 5, 1893.

"John R. Clark, F. Carruthers, Henry E. Glazier, J. W. Howard and J. C. Caldwell having been appointed regents of the Oklahoma Agricultural and Mechanical college, held an informal meeting on this day at the governor's office. Each of said parties named subscribed the following oath, to-wit:

" 'Territory of Oklahoma, ⎰ ss.
    Logan County,        ⎱

" 'I,————, of lawful age, being first duly sworn do state, that I will support the constitution of the United States, and the Organic Act of the Territory of Oklahoma, and will faithfully perform my duties as a member of the board of regents of the Oklahoma Agricultural and Mechanical college, so help me God.

"Before the Hon. William C. Renfrow, governor, and filed said oath with the governor.'

"The board then proceeded to organize by electing John R. Clark, of Stillwater, president and secretary of the board of regents of the Oklahoma Agricultural

and Mechanical college, and F. Carruthers of Norman was duly elected treasurer of said board.   By motion the bond of the treasurer was fixed at the sum of sixty thousand dollars.   By motion, board adjourned to meet at college building at Stillwater on August 8, 1893.

"J. R. CLARK, *President and Secretary.*"

The case was submitted by brief and argument. Peremptory writ denied.

*J. C. Roberts*, for relator.

*C. A. Galbraith*, Attorney General, and *Green & Strang*, for respondent.

The opinion of the court was delivered by

SCOTT, J.:   The questions for determination came up on the issues as shown by the statement of the case.

Can the controversy between the parties be settled without a trial of the title to the office of treasurer of the board of regents of the Agricultural and Mechanical college?   If the title to this office will necessarily become involved in the determination of this controversy, the court in the very beginning will encounter a rule of law so well established in our jurisprudence as to admit of no controversy.   It is so well settled that *mandamus* will not lie to try the title to an office that the subject needs no discussion here or elsewhere.   If the title is not involved and the aid of the writ of *mandamus* were sought merely to obtain possession of the effects, monies and official belongings of the office, a different question would be presented.

Counsel for relator contends very earnestly that an inquiry into the title to the office mentioned is unnecessary to determine to whom the money in the hands of the respondent should be delivered for the public use for which it was appropriated.   It is further con-

tended by relator's counsel that the courts will sometimes inquire incidentally into the title of an office, to the extent necessary to determine who should have possession of the effects and belongings of the office, and, in support of this theory, cites numerous cases, the leading one being *People vs. Head*, 25 Ill. 325, in which the learned chief justice uses this language:

"Whatever our decision may be, it cannot affect, in the least, the contest now going on in the legal tribunals. We can only determine whether the relator is entitled to the records, etc., pertaining to the office. It is true this involves, incidentally, the inquiry as to who is entitled to enjoy the office for the time being; but we by no means settle the question whether the relator was legally elected or not."

See, also High on Extraordinary Legal Remedies, p. 61; *People vs. Kilduff*, 15 Ill. 492; *Crowell vs. Lambert*, 10 Minn. 369; *Atherton vs. Sherwood*, 15 Minn. 221; *State vs. Layton*, 4 Dutch, 244; *Burr vs. Norton*, 25 Conn. 103; *Felts vs. Mayor*, 2 Head 650; *King vs. Owen*, 5 Mod. Rep. 314; *Rex vs. Clapham*, 1 Wils. 305; *King vs. Ingram*, 1 Black. W. 50; *Hooton vs. McKinney*, 5 Nev. 194; *Bonner vs. State of Geogria*, 7 Geo. 473; *American Railway Frog Co. vs. Haven*, 101 Mass. 398; *State vs. Goll*, 3 Vroom 285; *St. Luke's Church vs. Slack*, 7 Cush. 226; *Rex vs. Wildman*, Stra. 879; *Anon. vs. Barn*, K. B. 402; *Walter vs. Belding*, 24 Vt. 658; *Kimball vs. Lamprey*, 19 N. H. 215; *King vs. Payn*, 1 Nev. and P. 524; *Allen vs. Robinson*, 17 Minn. 113; *People vs. Stevens*, 5 Hill, 616; *People vs. Olds*, 3 Cal. 167; *State vs. Pitot*, 21 La. An. 336; and *Hussey vs. Hamilton*, 5 Kan. 462.

In the citation of these authorities, the relator again fails to make the distinction in cases of this kind. While the title is incidentally involved, in some of the cases cited, yet their clear import is the declaration of another rule of law which has become *stare decisis et non quieta movere*. The rule established by this long line of authorities may be found declared in High on

Extraordinary Legal Remedies, pages 62 and 63, as follows :

"The branch of the jurisdiction under discussion is of ancient origin and was exercised by the king's bench at an early day. Wherever the term of an officer has expired, he may be compelled by *mandamus* to turn over to his successor, all records and books pertaining to his office to which the public are entitled to access ; and the writ even may be granted for this purpose in aid of the person declared duly elected to the office and holding the certificate of election and duly sworn, although proceedings are pending to test the legality of his election, since the court by granting the writ does not finally determine upon the legality of the election. And while it is true that *quo warranto* is the only method of determining disputed questions of title to public offices, yet a mere groundless assumption of an election on the part of the respondent and a pretended exercise of the functions of the office *de facto*, will not deter the court from granting the *mandamus*.

"As regards the evidence of his title which the relator must show who seeks the aid of *mandamus* to recover possession of official records and insignia, it is held that, having received a certificate of election and qualified in the manner provided by law, he is, *prima facia*, entitled to their possession and may enforce his rights by aid of the writ. And upon the application for *mandamus* the court will not go behind the certificate of election to try the relator's actual title. It is, therefore, wholly immaterial whether the relator is eligible to the office in question or whether he is duly elected thereto, since to try such issues would be to determine the title upon proceedings in *mandamus*, which the courts will never do."

As to the writ of *mandamus* then, we have two settled rules as to public offices and the effects and belongings thereto: the one that *mandamus* will not lie to try title to a public office, and the other, that it will lie to compel a predecessor to deliver to his successor the books, papers, records, monies, insignia and paraphernalia thereof when the relator shows an abso-

lute *prima facia* title.   No court or lawyer of to-day-would for a moment controvert these two well settled rules of modern jurisprudence.

Does the case of the relator fall within either of these rules ?   He must concede that the title cannot be determined in this action.   Then, as a matter of course, if he claims relief under the other rule, he must show in himself, at least, a *prima facia* title; and this, none the less, notwithstanding an acceptance of the doctrine, as spoken by the learned chief justice in the case of *People vs. Head, supra,* that the title may be incidentally inquired into in determining who should have possession of the books, records, etc., of a public office.   While it may be true that the courts will sometimes inquire incidentally into the title to the office in determining who is entitled to the official belongings thereof, yet no case can be cited where the court so held, unless the relator, at the same time, proved in himself, at least a *prima facia* title thereto.

It may then be asked what it takes to constitute this evidence of title.   The numerous authorities above cited will abundantly answer the question.   It may be stated as a general rule that when the relator shows a certificate of election to an office, regular upon its face, or any lawful. evidence of title later and superior to any other claimant, and that he has qualified as required by law, this may be deemed a *prima facie* title thereto.

What does the record in this case disclose?   It discloses that the relator became a member of the board of regents by virtue of an appointment by A. J. Seay, on the 23rd day of January, 1893, at that time governor of Oklahoma Territory; that on the 31st day of July, 1893, the successor of A. J. Seay, W. C. Renfrow, removed the relator and appointed as his successor on August 4, 1893, one F. Carruthers, and issued to said Carruthers a commission for the same office, under the

seal of the territory, executed in a manner as solemn as any official paper could be issued by the executive authority of any state or territory; that the said Carruthers had qualified in form of law and was, too, claiming the funds in the hands of the respondent, Turner, under and by virtue of his office; that the respondent is holding the funds of the college in his possession solely on account of the rival claimants to this office contending therefor.

Even if nothing more could be claimed for the commission issued to Carruthers, it has the effect to cloud the title of the relator and render it impossible for him to show a *prima facia* right to the enjoyment of the office or to the possession of the effects thereof.

It is further contended by the relator that Governor Renfrow had exercised power in his removal without authority of law, and that incidentally this question can be inquired into by the court to determine if the commission issued to Carruthers is void, and if so, a void commission could in no manner affect the title of said relator. This will not do, for the court, in *mandamus*, will not go behind the certificate or commission. When the relator seeks to go behind the commission of Carruthers and have it declared void, necessarily, he puts in issue the title to the office. From this there is no escape. In the nature of things it must be so, and upon this rock he must founder and here his case must fail.

The question as to the right of Carruthers to the effects and official belongings of the office in question by the aid of the writ of *mandamus*, is not before us, and a discussion of that question is unnecessary.

It follows that the peremptory writ must be denied. It is so ordered.

Dale, C. J. and Burford, J., dissenting.