FREDERICK J. LANCASTER, Plaintiff, *v.* THE AMSTERDAM IMPROVEMENT COMPANY, Defendant.

It is not the public policy of this state to prevent foreign corporations from acquiring and holding real property here, if required for the transaction of any lawful business.

Under the General Corporation Law of this state (Chap. 687, Laws of 1892), every foreign stock corporation that has filed the necessary papers and procured the certificate of the secretary of state required by the act (§ 15) is accorded the same right to transact business here as domestic corporations.

The right thus given to a foreign corporation, so far as it relates to the purchase and sale of lands, is not limited by the provisions of said act (§§ 17, 18), authorizing such a corporation to purchase at a sale under foreclosure or on execution and to hold the land purchased for not exceeding five years, and to acquire such real property as may be necessary for its corporate purposes in the transaction of its business here.

The fact that special enabling acts have been procured in particular cases does not necessarily disprove the general right.

Where a corporation is regularly organized in and under the laws of another state, the facts that its incorporators are citizens of this state and that it has its principal office and conducts its business here do not affect the validity of its organization, or exclude it from recognition by the courts of this state.

Where such a corporation has filed a certificate of incorporation as required by the laws of its state, and has complied with the provisions of the law of this state, it is a corporation *de facto*, and any question as to its right to transact business here, because of alleged irregularities in its organization, may not be raised by one dealing with it.

*It seems* that under the Corporation Law of the state of New Jersey a corporation may be organized for the purpose of purchasing, selling and improving real estate.

A corporation organized in that state for such a purpose may come into this state and transact its business here.

A party who has contracted for the purchase of land from a corporation, having power to purchase and sell land for any purpose, may not raise the question that the vendor, in the transaction in question, has exceeded its authority.

Where, therefore, defendant, a corporation organized by residents of this state in and under the laws of New Jersey, for the purpose of the purchase, improvement and sale of real estate, and which had its principal office in this state, having complied with said provisions of the General Corporation Act, purchased and received a conveyance of land in this state, which it contracted to sell and convey to plaintiff, *held*, in the absence of any claim of defect in the title save as to the right of defendant to convey, that its deed would convey a good and sufficient title.

(Argued December 18, 1893; decided January 16, 1894.)

CROSS APPEALS from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made October 13, 1893, which directed judgment in favor of plaintiff upon a case submitted under section 1279 of the Code of Civil Procedure.

This was a submission of a controversy to the General Term in the first department upon agreed facts.

The Amsterdam Improvement Company was incorporated under the laws of the state of New Jersey, in May, 1891, by five persons; of whom one only was a resident of that state, the others being residents of this state. Its certificate of incorporation, filed that day, contained the following article:

"*Second.* That the places in this state, where the business

of such company is to be conducted, are Jersey City and the city of Hoboken, in the county of Hudson. The principal part of the business of said company within this state is to be transacted at Jersey City, in the county of Hudson, and the places out of this state where the same is to be conducted and where the company proposes to carry on operations are the cities of New York and Brooklyn, in the state of New York; and that the objects for which said company is formed are the purchase and sale of real property, both improved and unimproved, the improvement of such property as may be purchased, and which, when purchased, is unimproved, the exchange of property for other property, the lending of moneys upon first and second mortgages, secured by bonds, and the purchase and sale, by assignment or otherwise, of such mortgages and bonds. The portion of the business of said company which is to be carried on out of this state in the said cities of New York and Brooklyn will be such as will come under the head of the objects for which this company is formed. The principal office or place of business of said company, out of this state, is the city of New York, in the county and state of New York."

On December 21st, 1892, the secretary of state of the state of New York issued a certificate, of which the following is a copy :

"STATE OF NEW YORK.          }
" *Office of the Secretary of State, Albany.* }

" It is hereby certified that the Amsterdam Improvement Company, which appears from the papers filed in this office on the twenty-first day of December, 1892, to be a foreign stock corporation, organized and existing under the laws of the state of New Jersey, has complied with all the requirements of law to authorize it to do business in this state, and that the business of such corporation to be carried on in this state is such as may be lawfully carried on by a corporation incorporated under the laws of this state, for such or similar business."

The statute under which this company was incorporated provided that : " It shall be lawful for three or more persons

to associate themselves into a company to carry on any kind of manufacturing, mining, chemical, trading or agricultural business, agricultural fairs and exhibitions for the encouragement of competition in agriculture, horticulture, breed of stock and development of speed in horses, the transportation of goods, merchandise or passengers upon land or water, inland naviga- . tion, the building of houses, vessels, wharves or docks, or other mechanical business, the reclamation and improvement of submerged lands, the improvement and sale of lands," etc.

This statute also provided that corporations shall have the power " To hold, purchase and convey such real and personal property as the purposes of the corporation shall require, not ·exceeding the amount limited in its charter, and all other real estate which shall have been *bona fide* mortgaged to the said ·company by way of security, or conveyed to them in satisfaction of debts previously contracted in the course of dealings, or purchased at sales upon judgment or decree which shall be obtained for such debts."

Other provisions authorized a company organized under the statute to carry on a part of its business, and to have offices out of the state, and that " they may hold, purchase and convey real and personal property out of the state, the same as if such real and personal property were situated in the state of New Jersey, provided that the certificate of organization shall .state," etc., etc. Another provision authorized any New Jersey corporation, incorporated under any general or special act, to conduct its business outside the state.

May 23d, 1891, Arthur P. Smith was the owner of a lot of vacant and unimproved land in the city of New York, which, by a deed dated that day and duly recorded May 25th, 1891, he conveyed to the defendant. On the 15th day of January, 1893, the plaintiff and the defendant entered into a written contract whereby they agreed to exchange said lot of land for .another lot of land. owned by the plaintiff. The land of the plaintiff was valued at $72,000, and the land of the defendant at $49,500, and the difference, $18,500, the defendant agreed ·to pay to the plaintiff at the times and in the manner specified

in the contract. It was agreed that the deeds should be exchanged at a place named on or before February 15th, 1893. Pursuant to said contract the defendant executed a deed in due form by which it assumed to convey the premises to the plaintiff.

It is conceded that the defendant has done no business in the state of New Jersey, and that the only business or transactions in which it has been engaged since its organization, have been carried on in the city and county of New York.

The following question was submitted to the General Term : " Whether said defendant, the Amsterdam Improvement Company, possessed, and has conveyed to Frederick J. Lancaster, the plaintiff herein, a good and sufficient title to the premises described in said contract and deed." That court has adjudged that the defendant's deed did not convey to the plaintiff a good title, and that its title was subject to the right, title and interest of the People of the state, whose title was, at the time of the execution and delivery of the deed, superior and prior to that of the defendant.

*Thomas P. Bassford* for plaintiff. The defendant could not enter into a transaction similar to the one it has attempted to enter into with plaintiff, even if the land attempted to be transferred were located in the state of New Jersey. (*Pinckney* v. *Burrage,* 2 Vroom, 21.) The defendant, a New Jersey corporation, cannot lawfully operate *ad libitum* in real estate located within the state of New York. (*Jackson* v. *Ingraham,* 4 Johns. 182; Story on Conflict of Laws, 363; *Carroll* v. *St. Louis,* 67 Ill. 568; *Demarest* v. *Flack,* 128 N. Y. 218; *Plimpton* v. *Bigelow,* 93 id. 592; *Bard* v. *Poole,* 12 id. 507; *American Union* v. *Yost,* 101 U. S. 352.) If defendant contravened the public policy of this state in attempting to deal in real estate *ad libitum* within the state of New York, its acts were null and void, and it never became vested with any title to the plot of land it agreed to convey to plaintiff. (*Hunt* v. *Knickerbocker,* 5 Johns. 327; *Bank* v. *Niles,* 1 Dong. 401; *Runyan* v. *Coster,* 14 Pet. 122; *In re McGraw,*

111 N. Y. 97.)   The defendant acquired no title through the deed taken from its grantor, but the title vested in the individual members of the corporation.   (*Hill* v. *Beach*, 12 N. J. Eq. 31, 35; Spelling on Priv. Corp. § 90, p. 110; *E. R. Co.* v. *State, etc.*, 31 N. J. L. 531, 544; *E. Mills* v. *Alston*, 15 S. W. Rep. 200; Murfree on Foreign Corp. § 4.)   If defendant took a title to the One Hundred and Eighteenth street lots that was defeasible in its hands, the same became indefeasible in the hands of its grantee, the plaintiff.   (Laws of 1892, chap. 677, § 1; *People* v. *Trinity Church*, 22 N. Y. 44.)

*Louis Marshall* and *Hugo S. Mack* for defendant.   The Amsterdam Improvement Company is a legally incorporated entity under the laws of the state of New Jersey, having the power thereunder of dealing in real estate, not only within the sovereignty of its creation, but also in this state.   (*Den* v. *Gustin*, 12 N. J. L. 42; *Smith* v. *Sheeley*, 12 Wall. 358; *Fritts* v. *Palmer*, 132 U. S. 282; *H. W. Co.* v. *De Kay*, 36 N. J. Eq. 548, 558.)   There is nothing in the policy of this state which prohibits a corporation formed in another state, composed entirely of citizens of this state, for the purpose of transacting business here, from exercising its corporate powers within our jurisdiction.   (*Demarest* v. *Flack*, 128 N. Y. 205.)   At common law any corporation had the power to take, hold and convey real estate for any purposes not inconsistent with those for which it was created.   (1 Washb. on Real Prop. [4th ed.] 81; 1 Beach on Priv. Corp. § 377; *In re McGraw*, 111 N. Y. 93.)   Not only do our statutes fail to prohibit the defendant from carrying on its business in this state, and in the course thereof to sell and convey real estate therein, but they expressly authorize it to be done by a foreign corporation thus empowered by the law of its origin.   (*Bard* v. *Poole*, 12 N. Y. 505; *Demarest* v. *Flack*, 128 id. 214; *Stevens* v. *Pratt*, 101 Ill. 206; *Cowell* v. *S. Co.*, 100 U. S. 55; *N. H. L. Co.* v. *Tilton*, 19 Fed. Rep. 73; *Mayor, etc.*, v. *Sands*, 105 N. Y. 210; *People* v. *Chapin*, Id. 316; *White* v. *Howard*, 46 id. 144; *In re Fox*, 52 id. 530;

*United States* v. *Fox,* 94 U. S. 530; *Comm.* v. *N. Y., L. E. & W. R. Co.,* 132 Penn. St. 591.) Assuming that section 17 of the General Corporation Law is to receive a narrow construction, the defendant was nevertheless authorized to acquire such real property in this state as might be necessary for its corporate purposes, and nothing appearing to indicate that the property in question was not in fact necessary for that purpose, it is to be presumed that the transaction whereby it acquired title to this property was consistent with its charter. (*F. L. & T. Co.* v. *Curtis,* 7 N. Y. 466; *C. C. Bank* v. *Risley,* 19 id. 369; *Yates* v. *Van de Bogart,* 56 id. 526; *Cowell* v. *S. Co.,* 100 U. S. 55.) Assuming further that under the laws of this state a foreign corporation like the present has no right to hold real property for speculative purposes, yet having acquired title thereto for a valuable consideration, it nevertheless could convey a good and sufficient title to the plaintiff before divestiture of its title at the instance of the state. (*Runyan* v. *Coster,* 14 Pet. 122; *Sheaffe* v. *O'Neil,* 1 Mass. 256; *Bradstreet* v. *Oneida Co.,* 13 Wend. 548; *Marshall* v. *Conrad,* 5 Call, 364; *Jinkins* v. *Noel,* 3 Stew. [Ala.] 60; *Montgomery* v. *Dorion,* 7 N. H. 475; *Foxwell* v. *Craddock,* 1 P. & H. 250; *Halstead* v. *Lake County,* 56 Ind. 363; *Marx* v. *McGlynn,* 88 N. Y. 376; *Dooley* v. *Wolcott,* 4 Allen, 406.) In no event had Crawford such an interest or ownership of the property in question as could become the subject of a lien in favor of his judgment creditors. (*Greenwood* v. *Marvin,* 111 N. Y. 423; *Sage* v. *Sherman,* 2 id. 417; *Chester* v. *Dickerson,* 54 id. 91; *Fairchild* v. *Fairchild,* 64 id. 471.)

GRAY, J. Before approaching the discussion of the principal question in this case, certain questions of subordinate importance may be disposed of, which have been raised upon the argument. One of them relates to the right of this corporation to recognition in our courts, as affected by the fact that the incorporators are, with one exception, citizens and residents of this state. Whatever inferences can be drawn as to the motives which took them into a foreign jurisdiction to

organize a corporation under its laws, I agree with the General
Term that any such question has been once and for all settled
by our recent decision in the case of *Demarest* v. *Flack* (128
N. Y. 205). It appeared in that case that citizens of this
state incorporated under the laws of West Virginia to carry
on a certain business; with the principal office of the company
in New York city, where only it had been conducting its
operations. It was claimed that these facts invalidated the
corporation, and that there was a manifest evasion of, and
fraud upon, the laws of the state. But it was held that they
constituted no reason for refusing recognition to the corpora-
tion; that there was no essential difference between a corpo-
ration formed under the laws of a foreign state, the members
of which were its own citizens, and one so formed, the mem-
bers of which were citizens of our own state. If our citizens
are attracted to other jurisdictions for purposes of incorpora-
tion, because of more favorable corporation or taxation laws, I
cannot see in that fact, however, and in whatever sense, to be
deplored, any reason that they should be prevented from
employing here the corporate capital in the various channels
of trade or manufacture. That, as it seems to me, would be a
rather hurtful policy and one not to be attributed to the state.

Another question relates to the regularity of the proceed-
ings for the incorporation of the defendant company under the
laws of the state of New Jersey. I am unable to perceive any
defect therein. I should say there had been a compliance
with its statutes. But if there could be pointed out some
irregularity, it could not be made the subject of an objection
to the defendant's title. It was a corporation *de facto*. Its
incorporators had filed their certificate of incorporation, as
required by the laws of New Jersey, and a certificate had been
filed in the office of the secretary of state of this state, as
required by our laws of a foreign corporation. It was exercising
a franchise attempted to be conferred upon it by the laws of
New Jersey, and any question affecting its right to transact busi-
ness, because of alleged irregularities in organization, is a matter
for the government of that state to inquire into. It was said

in *Methodist Epis. Church* v. *Pickett* (19 N. Y. 482), with
respect to the capacity of corporations to act, that " the rule
established by law, as well as by reason, is that parties, recog-
nizing the existence of corporations by dealing with them,
have no right to object to any irregularity in their organiza-
tion, or any subsequent abuse of their powers, not connected
with such dealing. As long as they are overlooked, or toler-
ated by the state, it is not for individuals to call them in ques-
tion." That this principle is equally applicable to foreign
corporations *de facto* was held in *Bank of Toledo* v. *Inter-
national Bank* (21 N. Y. 542). With respect to the question
of whether the laws of the state of New Jersey authorize the
kind of business which this company was organized and pro-
poses to transact, I think that the provisions of the statute
for the formation of corporations, to which our attention is
directed, are broad enough in their scope to comprehend the
objects of this incorporation. They authorize incorporations
for the purpose of the improvement and sale of lands. With
such an authorization and, as a corporation, being vested under
those laws with the authority to hold, purchase and convey
such real and personal estate, as the purposes of the corpora-
tion shall require, there is ample support for a construction
that this company may deal in the purchase and sale of real
estate. But, if any doubt might be entertained upon the cor-
rectness of our construction of this foreign statute, I do not
think the doubt affects the question here. If to engage in the
business of buying and of selling real property is to act in
excess of the powers conferred upon the corporation by the
statute of New Jersey, it is for that government to inquire
into the exercise by its creature of corporate powers. It is
not a question which the party dealing with it can raise. As
a corporation *de facto*, possessing some capacity to acquire
and convey real property, its conveyance is unimpeachable
upon any ground of an excess or of an abuse of powers con-
ferred, and unless in the laws of this state we are able to find
a prohibition, expressed herein, or to be implied therefrom,
which disabled this corporation from acquiring the land and

from conveying it, the plaintiff would obtain a valid title to the premises conveyed.

The principal question for our consideration is one of great importance; for upon its decision not only depend large interests, but a judicial definition of state policy. That question may be thus succinctly stated : Under our laws, can a foreign corporation, incorporated for the purpose of dealing in the purchase and sale of real property, come into this state and transact here such kind of corporate business? The General Term put the question in somewhat different form : Whether it may " purchase and hold lands within this state which are not necessary for its business and which have not been acquired in securing the payment of a debt due to it." That is hardly exact, as applied to the case of this corporation. As I have shaped it, the question is certainly made broad enough.

The opinion of the General Term was delivered by Mr. Justice FOLLETT, whose opinions are entitled to the highest respect, and he negatives the proposition embodied in the question ; upon the ground, in substance, that from certain general statutes of this state, which relate to the right of foreign corporations to purchase, or acquire, and to convey real property, and from numerous special acts, passed to authorize them to acquire lands, it is to be inferred that " it is contrary to the policy of this state to permit such corporations to take, hold and convey lands in this state, without being specially authorized so to do." The general statutes to which he refers are chapter 158 of the Laws of 1877 and chapter 450 of the Laws of 1887, and he considers that to their declarations is to be referred, solely, the question of the right of foreign corporations, generally, to acquire, hold and convey lands ; for they alone recognize their right in such respects. The act of 1877 authorized a foreign corporation to purchase at a sale under the foreclosure of a mortgage or under a judgment held by it ; to hold the land purchased for not exceeding five years, and to convey it, etc., etc. The act of 1887 authorized a foreign corporation, doing business in this state, to acquire such real property as might be necessary for its corporate purposes in

the transaction of its business here. Both provisions were re-enacted in the " General Corporation Law " of 1892 (Chapter 687, Laws 1892), as sections 17 and 18.

In order to uphold the validity of the conveyance in question here, I think we might very safely rest our conclusion upon the enactment of 1887, if other grounds were lacking. We might, without doing violence to any rule of law, say that that act was such sufficient authority, as to make the title to the land conveyed by the foreign corporation quite indefeasible in its grantee. The General Term thought it was not broad enough ; but there would not be much stress in reasoning that the foreign corporation being authorized to do business here, the authorization of the act of 1887 " to acquire such real property as may be necessary for its corporate purposes in the transaction of its business in this state," even though we were disposed to define it as comprehending merely property for proposed use as an office, a warehouse or factory, etc., would, nevertheless, be sufficient to enable the corporation in possession of land by its conveyance to vest in the grantee a good title to it. It is not for the party contracting for the conveyance of its land to raise the question of how far his grantor may have exceeded the authority given by the statutes of this state, any more than he might with respect to an alleged abuse of the powers conferred by its home charter. Those are questions between the corporation and the government. The presumption militates in favor of the validity of the transaction, and the right of interference by the state does not extend to any forfeiture of the property held by the corporation. (*In re McGraw,* 111 N. Y. 66, 96.)

In *Cowell* v. *Springs Co.* (100 U. S. 55) the objection was that the National Land & Improvement Company, a Pennsylvania corporation which granted certain lands in Colorado to the springs company, was not empowered to acquire a right to the lands, for the reason that they were not necessary to enable it to carry on its business ; to which extent corporations in Colorado were limited, because of restrictions upon the legislative power in the creation of corporations. It was held that

" whether the particular premises in controversy are necessary
for that business is not important ; that is a matter between
the government of the state and the corporation, and is no
concern of the defendant."

· But we are not confined to any such narrow ground as a con-
struction of the particular acts referred to.　Our general laws
are such as to evidence a state policy, which makes no invidious
distinction against foreign corporations, coming within our
boundaries to extend the area of · their lawful operations.
The answer to the question is not to be found in the acts to
which the learned General Term justices refer.　If they have
not overlooked they have failed, in my judgment, to give due
weight and significance to other provisions upon our statute
books.

The General Corporation Law, passed in 1892, contains
these further provisions as to foreign corporations :

" SECTION 15.　No foreign stock corporation other than a
monied corporation shall do business in this state without hav-
ing first procured from the secretary of state a certificate that
it has complied with all the requirements of law to authorize
it to do business in this state, and that the business of the cor-
poration to be carried on in this state is such as may be law-
fully carried on by a corporation incorporated under the laws
of this state for such or similar purposes.　＊　＊　＊　The sec-
retary of state shall deliver such certificate to every such cor-
poration so complying with the requirements of law.　No
such corporation now doing business in this state shall do busi-
ness herein after December 31, 1892, without having procured
such certificate from the secretary of state.　＊　＊　＊　No
foreign stock corporation doing business in this state without
such certificate shall maintain any action in this state ,upon
any contract made by it in this state until it shall have pro-
cured such certificate.

" SECTION 16.　Before granting such certificate the secretary
of state shall require every such foreign corporation to file in
his office a sworn copy of its charter or certificate of incorpo-
ration, and a statement under its corporate seal, particularly

setting forth the business or objects of the corporation which it is engaged in carrying on, or which it proposes to carry on, within the state, and a place within the state which is to be its principal place of business, and designating, in the manner prescribed in the Code of Civil Procedure, a person upon whom process against the corporation may be served within the state.

" The person so designated must have an office," etc.

The negative form of the legislative expression is pregnant with meaning. All foreign stock corporations are accorded the same right to transact their business here as domestic corporations have, if it be one which the latter may also lawfully transact, and provided there has been compliance with certain stated requirements. It is a recognition of the right of a foreign corporation to do business here, with the imposition of reasonable conditions. A certificate was granted by the secretary of state, in December, 1892, which certified a compliance with all the requirements of law and that the business of the corporation to be carried on here was such as may be lawfully carried on by a corporation incorporated under our laws for such or similar business. By chapter 691 of the Laws of 1892, known as " the Business Corporations Law," what restrictions may have existed upon the organization of corporations in this state, previously, were done away with. Under that law " three or more persons may become a corporation for the purpose of carrying on any lawful business," by executing and filing a certificate, which shall contain the objects for which formed, including the nature and locality of the business. The effect of all recent legislation is, most clearly, to remove all barriers to the transaction, through incorporation, of any lawful business in this state and to recognize an equal right in the foreign corporation with that of the domestic corporation.

Presumably, in the opinion of the learned General Term justices, it was not considered that sections 15 and 16 of the General Corporation Law include within their purview such a business as the acquisition of lands within this state by

foreign corporations, for purposes not connected with necessities for a corporate use. But I do not think we can so limit the meaning of these sections. It is true, that they are followed by sections 17 and 18, to which the opinion below attaches such weight; but their presence is no warrant for ignoring the broad and general authority contained in the preceding provisions. Section 18 may still have an office to perform, in limiting the period of time for which a foreign corporation, without a certificate here, may hold land taken for a debt, or purchased at a sale under a judgment or decree; while the necessity for retaining section 17 is not readily perceived. The foreign corporation, which desires to acquire real property, solely for use connected with the transaction of its business here, must, under section 15, procure the certificate of the secretary of state as a condition of being permitted to carry on business and, having the certificate, its right to do business as freely as a domestic corporation, necessarily, carries with it the recognition of the right to acquire and hold what real property may be necessary for that purpose. Both sections, possibly, were retained in the revision of corporation laws out of abundant caution. Neither section is a new enactment; but merely the continuation of an existing law. Whatever the reason to be assigned for retaining sections 17 and 18, the provisions of sections 15 and 16 contain an authoritative declaration by the legislature, and we neither can, nor should, attempt to refine away their comprehensive meaning. Nor am I able to perceive that it is, or that it ever was, the policy of this state to prevent foreign corporations from acquiring and holding real property here, if desired for the transaction of any lawful business. To discover the public policy of a state we are limited, as it was observed by Mr. Justice Story, in the *Girard Will Case* (2 How. [U. S.] 127), to what " its constitution and laws and judicial decisions make known to us." I am aware of nothing in the Constitution upon the subject. There were no statutes passed upon the subject prior to the act of 1877, referred to, and in their silence the principle of a

general right in legally constituted corporations, with sufficient chartered powers, and the principle of assent implied by the general law of comity between states, had a scope for operation in favor of the right of a foreign corporation to acquire and hold real property here. If special enabling acts have been procured, in particular cases, they do not, necessarily, disprove the general right. Prudence and cautious counsels may have dictated their procurement. While the enactment of the statute of 1877 contained a limitation upon the right of the foreign corporation to hold real property, with respect to time, the subsequent act of 1887 was in the direction of removing such, or any, limitation. Then came the general statutes of 1892, which allowed all foreign corporations to do business here, upon compliance with conditions named, and which placed them upon a similar footing with domestic corporations, as to transaction of a corporate business. If we turn, only, to decisions of this court, in our investigation of what has been the public policy of this state towards foreign corporations, we find them interpreting and applying the principle of state comity in the broadest spirit. In *People* v. *Fire Association* (92 N. Y. 311) it was observed that " Where a state does not forbid, or its public policy, as evidenced by its laws, is not infringed, a foreign corporation may transact business within its boundaries and be entitled to the protection of its laws." In *Hollis* v. *Drew Seminary* (95 N. Y. 166) it was held that " unless the legislature forbids, they " (foreign corporations) " can come here as freely as natural persons and exercise here all the powers conferred upon them by their charter, subject to the limitation imposed upon natural persons, that is, they can do no acts in violation of our laws, or of our public policy. But, unless prohibited by law, they can do here, within the limits of their chartered powers, precisely what domestic corporations can do." This decision was in line with the early case in this court of *Bard* v. *Poole* (12 N. Y. 495), in which the discussion turned upon the question of the right of a corporation of the state of Maryland to make loans, secured by mortgages upon real estate within this state.

Judge DENIO said, in the opinion in that case, that "Any of the states of the Union may, as this and several of the other states have done, interdict foreign corporations from performing certain single acts, or conducting a particular description of business within its jurisdiction. But, in the absence of laws of that character, or in regard to transactions not within the purview of any prohibitory law and not inconsistent with the policy of the state as indicated by the general scope of its laws or Constitution, corporations are permitted by the comity of nations to make contracts and transact business in other states than those by virtue of whose laws they were created, and to enforce those contracts, if need be, in the courts of such other states. It is, of course, implied that the contract must be one which the foreign corporation is permitted by its charter to make, and it must also be one which would be valid if made at the same place by a natural person, not a resident of that state."

It seems to me to be very clear, upon examination of our laws and by reference to such judicial opinions, that there never was a time in the history of the state when a foreign corporation was prevented from entering its boundaries to transact any lawful business, which a non-resident natural person might have transacted here. What public policy is invaded, and what public interests are prejudiced, by extending to the foreign corporation, for the transaction of its business, the privileges and protection of the laws of our own state, even when that business involves the acquisition of and dealing in real property? If we were to consider the question simply in the light of a sound or a good policy, there are abundant reasons for holding that it is to the public advantage that our borders should be as much open, for all lawful purposes, to foreign corporations as to natural persons. Their advent and lawful operation cannot but tend to some advancement of our commercial interests and must advantage the commonwealth. It is the policy of the state to encourage the employment of capital here by liberal laws; upon what reasonable ground shall we recognize the natural person who comes here

and refuse recognition to the foreign corporation? And how is the matter affected if the capital is employed in dealing in the acquisition and barter of lands, and not in commerce, manufacturing, or such like ways? What legal difference is there, which the state can recognize, if all the corporators happen to be residents of this state? The corporation is, nevertheless, a legal entity, endowed by a sister state with capacities and powers, and seeks our state as the field of its activity in the conduct of its business enterprise. Incorporations are, as a rule, advantageous to private and to public interests. As the business capacities of the general mass of mankind are constantly improving, associations of individuals, voluntarily combining their contributions, are able to perform works of various characters, which no one person is able to accomplish. I believe that to be a well-recognized principle in political economy. But we are not to consider the question as one simply of sound or of good policy, but whether there is any known public policy which is affected. What reason is there that the courts shall condemn the business proposed to be carried on by the defendant? What vice inheres in it? The case does not fall within those which the courts have decided to be against public policy. The business is not immoral in itself. That it is not prohibited by legislation, I think I have been able to show.

In the opinion below, it is suggested that if the defendant may legally acquire and convey land in this state at pleasure, there is no limitation upon the amount which a foreign corporation may hold, except in its ability to purchase and pay. As applied to the case of this corporation, it might be a sufficient answer to say that the chartered purpose of dealing in the purchase and sale of real property rather negatives the idea of an intended accumulation of real estate holdings to any extraordinary extent. But a better answer would be that it is always within the power of the legislature to interfere and to regulate, if, by the magnitude of the business, the public interests are affected and seem unduly threatened. Decisions of this court might be referred to, to show how far the legisla-

tive power has been deemed capable of extending in the direction of controlling a private business, on the ground that its magnitude affected the public and justified such interference.

Without prolonging the discussion, I think the General Term erred in their conclusions, and that the judgment should be reversed, and that judgment should be ordered for the defendant upon the submission, with costs.

All concur, except BARTLETT, J., not sitting.

Judgment accordingly.