## MITCHELL v. CARTER.

No. 2796.    Opinion Filed March 12, 1912.

(122 Pac. 691.)

**MUNICIPAL CORPORATIONS — Mandamus — Charter — Collateral Attack.** A charter having been framed by a city containing a population of more than 2,000 inhabitants, for its own government, by freeholders elected for such purpose, and the same having been submitted to the qualified voters thereof for adoption, and returns of such election having been made and the charter submitted to the Governor for his approval, and the Governor having approved the same, the invalidity of such charter on the alleged failure to comply with some of the requirements of sections 3a and 3b of article 18 of the Constitution cannot be raised in a mandamus proceeding. brought by one of the officers holding prima facie evidence of title from a municipal election held pursuant to the powers of such charter, against one of the officers holding under the old charter to recover the belongings of such office.

(a) In a mandamus proceeding, brought by an officer elected at a municipal election held under the powers of such charter to re-

quire the turning over to him the belongings of such office by an officer claiming to hold by virtue of his election under the old charter, said relator in the mandamus proceeding holding a certificate of election by virtue of a municipal election held under the powers of such charter, the respondent will not be permitted to contest the title or the right of the relator to such office on the alleged ground of the invalidity of such municipal election on account of the failure to hold a primary election pursuant to the primary election laws passed by the Legislature to govern municipalities, or other irregularity in holding such election.

(Syllabus by the Court.)

Hayes and Kane, JJ., dissenting.

### Error from District Court, Logan County; A. H. Huston, Judge.

Action by N. M. Carter against W. H. Mitchell. Judgment for plaintiff, and defendant brings error. Affirmed.

*James Hepburn, W. H. Chappell,* and *Devereux & Hildreth,* for plaintiff in error.

*Burford & Burford* and *Dale, Bierer & Hegler,* for defendant in error.

WILLIAMS, J. Plaintiff in error seeks in this proceeding to have determined (1) the legality of the election for the adoption of the charter of the city of Guthrie, and (2) the validity of the election held by virtue of the terms of said charter for the election of municipal officers. It is contended by the defendant in error that the validity of the charter can only be brought in question by a direct action instituted by the state. The charter in question was framed by virtue of the powers granted by sections 3a and 3b of article 18 of the Constitution.

1. Can the plaintiff in error in a mandamus proceeding brought by a person elected to an office created by the charter, said election having been held under the powers granted by said charter, in such proceeding question the validity of the adoption of such charter or the validity of the election at which such officer was elected?

In *Ewing v. Turner,* 2 Okla. 94, 35 Pac. 951, it was held that, as a general rule, in an action for mandamus, where the

Mitchell v. Carter.

relator shows a *prima facie* title to a public office, he is entitled to the aid of mandamus to obtain possession of the books, records, insignia, paraphernalia, and official belongings of such office, and in granting the writ the court will not go behind such showing and try the title thereto. In *Ewing v. Turner, supra,* it is said:

"It is further contended by the relator that Gov. Renfrow had exercised power in his removal without authority of law, and that incidentally this question can be inquired into by the court to determine if the commission issued to Carruthers is void, and, if so, a void commission could in no manner affect the title of said relator. This will not do, for the court, in mandamus, will not go behind the certificate or commission. When the relator seeks to go behind the commission of Carruthers and have it declared void, necessarily he puts in issue the title to the office. From this there is no escape. In the nature of things it must be so, and upon this rock he must founder, and here his case must fail."

In *Cameron v. Parker,* 2 Okla. 277, 38 Pac. 14, the case of *Ewing v. Turner,* 2 Okla. 94, 35 Pac. 951, was re-examined and adhered to.

In *Matney v. King,* 20 Okla. at page 42, 93 Pac. at page 745, the case of *Cameron v. Parker, supra,* is cited, wherein the following excerpt is quoted:

"In an elective office the law requires that the credentials of the person declared duly elected shall be a certificate of election, or in an appointive one, as in the case at bar, a commission from the Governor. This is the highest evidence of title the law requires, and it is not for an individual to assert the invalidity of the law authorizing it, the want of authority for its issuance, or the legal exercise of the power conferring it. These are questions for the courts to determine. But in the meantime the person holding the commission or certificate of election, legal upon its face, evidencing the absolute *prima facie* title to the office, is entitled to the possession of the books, records, and official belongings thereto, notwithstanding the actual title may be in controversy at the time, and in the same or another tribunal."

In the same opinion this court said:

"Thus in *Rex v. Bankes,* 3 Burr. 1452, Lord Mansfield proposed, upon the argument, that affidavits be laid before him that

he might determine whether it was a doubtful election and fit to be tried upon an information in the nature of a *quo warranto*, or whether it was merely colorable, and clearly void; saying that in the former case the court might not grant a mandamus, while in the latter case they ought. This case falling fully within the rule sanctioned by the common law, and well supported by decisions of courts of last resort, both state and federal, this court, having all the facts before it, should render effective relief. This proceeding does not in any way affect the title to the office; but the person having *prima facie* title to it is entitled to recognition as clerk of the district court by the respondent as judge of the court until his title is upset by a proper proceeding."

In *Matney v. King, supra,* Toney Matney held a certificate of election issued by the regular county clerk, whilst Carroll S. Bucher held one issued by Frank R. Applegate. This court in that case determined who was the proper officer to issue said certificate, and, having reached the conclusion that Porter Spaulding was the proper county clerk to issue the certificate, held the certificate issued by such clerk to be *prima facie* evidence of Matney's title to the office.

In this case it is conceded that the person acting as Governor, who approved this charter, was the proper officer to approve it. A board of freeholders was elected and a charter framed and adopted under the powers granted by sections 3a and 3b of article 18 of the Constitution. Such charter was submitted to the Governor and approved by him. Then the election for municipal officers was held pursuant to the terms of said charter. There being a valid law under which the charter was framed, as to whether it was complied with, the Governor having approved the charter, we do not think that in this collateral proceeding such question can be raised.

In *Higbee v. Aetna Bldg. & Loan Ass'n*, 26 Okla. 327, 109 Pac. 236, it was held that:

"The due incorporation of any company claiming in good faith to be a corporation under the laws of this state and doing business as such, or its right to exercise corporate powers, cannot be inquired into collaterally in any private suit to which such *de facto* corporation may be a party. (a) Such inquiry may be had in an action brought in a direct proceeding for such purpose."

"Wherever there is a valid law under which a corporation with the powers assumed might have been lawfully incorporated, and there is an attempt, apparently in good faith, to comply with the requirements of such law, and the corporation thus attempted to be created is organized and enters upon the transaction of business, its existence as a *de facto* corporation is established, even though it has failed to comply with the law in some particular which prevents it from being a corporation *de jure.*"

*Gilkey v. How,* 105 Wis. 41, 81 N. W. 120, 49 L. R. A. 483; *Stout v. Zulick,* 48 N. J. Law, 601, 7 Atl. 362; *Methodist Episcopal Union Church v. Pickett,* 19 N. Y. 482; *Bank of Toledo v. International Bank,* 21 N. Y. 542; *Lancaster v. Amsterdam Improv. Co.,* 140 N. Y. 584, 35 N. E. 964, 24 L. R. A. 322; *Larned v. Beal,* 65 N. H. 184, 23 Atl. 149; *Society Perun v. Cleveland,* 43 Ohio St. 481, 3 N. E. 357; *Spring Valley Waterworks v. San Francisco,* 22 Cal. 434; *Haas v. Bank of Commerce,* 41 Neb. 754, 60 N. W. 85; *American Salt Co. v. Heidenheimer,* 80 Tex. 344, 15 S. W. 1038, 26 Am. St. Rep. 743; *McTighe v. Macon Constr. Co.,* 94 Ga. 306, 21 S. E. 701, 32 L. R. A. 208, 47 Am. St. Rep. 153.

Where there is no law authorizing such corporation *de jure,* there can be no corporation *de facto.* *Evenson v. Ellingson,* 67 Wis. 634, 31 N. W. 342; *Schriber v. Langlade,* 66 Wis. 616, 29 N. W. 547, 554; *McTighe v. Macon Const. Co.,* 94 Ga. 306, 21 S. E. 701, 32 L. R. A. 208, 47 Am. St. Rep. 163; *Western Union Tel Co. v. Mexican Agricultural Land Co., ante,* 122 Pac. 505.

It is well settled that the corporate existence of a corporation *de facto* cannot be inquired into collaterally, but may be inquired into by direct proceeding. *Stout v. Zulick,* 48 N. J. Law, 599, 7 Atl. 362.

The right of a *de facto* corporation to act or the validity of its acts cannot be questioned except in proceeding in *quo warranto,* or a direct proceeding. *Continental Trust Co. v. Toledo R. R.* (C. C.) 82 Fed. 649; *Miller v. Irrigation Dist.* (C. C.) 85 Fed. 699; *Miller v. Irrigation Dist.* (C. C.) 92 Fed. 265; *Miller v. Irrigation Dist.* (C. C.) 99 Fed. 143; *Speer v. Board of Commissioners,* 88 Fed. 764, 32 C. C. A. 101; *Leach v. People,* 122

Ill. 427, 12 N. E. 726; *Lyons v. Woods,* 153 U. S. 669, 14 Sup. Ct. 959, 38 L. Ed. 861; *Ex parte Ward,* 173 U. S. 452, 19 Sup. Ct. 459, 43 L. Ed. 765. In *Ex parte Ward, supra,* it was held that:

"The result of the authorities is that title of person acting with color of authority, even if he be not a good officer in point of law, cannot be collaterally attacked."

See, also, *Tulare Irrigation Dist. v. Shepard,* 185 U. S. 1, 22 Sup. Ct. 531, 46 L. Ed. 773; *American Salt Co. v. Heidenheimer,* 80 Tex. 344, 15 S. W. 1038, 26 Am. St. Rep. 743; *Allen v. Long,* 80 Tex. 261, 16 S. W. 43, 26 Am. St. Rep. 735; *Snider v. Troy,* 91 Ala. 224, 8 South. 658, 11 L. R. A. 515, 24 Am. St. Rep. 887.

In *People v. La Rue,* 67 Cal. 526, 8 Pac. 84, it was held:

"A corporation *de facto* may legally do and perform every act and thing which the same entity could do and perform were it a *de jure* corporation. As to all the world, except the paramount authority under which it acts and from which it receives its charter, it occupies the same position as though in all respects valid; and even as against the state, except in direct proceedings to arrest its usurpation of power, it is submitted, its acts are to be treated as efficacious."

It follows that in this collateral proceeding the question as to the validity of the adoption of the charter cannot be challenged.

2. Was the election, held pursuant to the terms of the charter and at which the defendant was elected, valid?

The First Legislature enacted the following provision:

"When a charter for any city of this state shall have been framed, adopted and approved according to the provisions of this act, and any provisions of such charter shall be in conflict with any law or laws relating to cities of the first class in force at the time of the adoption and approval of such charter, the provisions of such charter shall prevail and be in full force, notwithstanding such conflict, and shall operate as a repeal or suspension of such state law or laws to the extent of such conflict; and such state law or laws shall not thereafter be operative in so far as they are in conflict with such charter; provided, that such charter shall be consistent with and subject to the provisions of the Constitution, and not in conflict with the provisions of the Constitution and laws relating to the exercise of the initiative and

referendum, and other general laws of the state not relative to cities of the first class." (Sess. Laws 1907-08, c. 12, p. 190; section 801, Comp. Laws 1909.)

In *Lackey v. State,* 29 Okla. 255, 116 Pac. 913, this court, in construing said statute, said:

"It is clear that the foregoing statute intends to provide that wherever a freeholders' charter has been adopted under the provisions of the Constitution, and conflicts with any law of the state relating to municipal matters of cities of the first class, the provisions of such charter shall prevail."

In other words, the effect of said statute was to declare the law as it already existed in the Constitution, merely setting out the same in greater detail than as contained in article 18. In *Lackey v. State, supra,* the rule was declared that whenever any matter fell "within the domain of municipal government" or related solely to municipal affairs, such provision of a municipal charter, adopted pursuant to the provisions of article 18, superseded the general state laws.

The charter provides for the appointment of precinct election officers by the mayor, instead of the county election board, as required by the state laws, the precinct board appointed by the mayor to consist of two judges and two clerks, who shall also act as counters, instead of an inspector, judge, and clerk and four counters, as provided by the general election law, the returns to be canvassed by the city clerk, instead of the county election board; also for a ballot which shall not contain any designation of parties, but upon which the names of the candidates for each office appear in alphabetical order.

It is further contended that the charter election law is in conflict with the general election law, in that the latter does not provide any means for placing upon the ballot the name of a nonpartisan candidate. That the election of municipal officers is strictly a municipal affair seems to be sustained by authority. *People v. Hill,* 125 Cal. 16, 57 Pac. 669; *Socialist Party v. Uhl,* 155 Cal. 776, 103 Pac. 181; *Graham v. Roberts,* 200 Mass. 152, 85 N. E. 1009; *Ewing v. Hoblitzelle,* 85 Mo. 74.

Although the charter provisions as to purely municipal matters may supersede the general state laws, yet such provisions may not supersede the provisions of the Constitution of the state. Section 5, art. 3, of the Constitution provides:

"The Legislature shall enact laws providing for a mandatory primary system, which shall provide for the nomination of all candidates in all elections for state, district, county, and municipal officers, for all political parties including United States Senators: Provided, however, this provision shall not exclude the right of the people to place on the ballot by petition any nonpartisan candidate."

It is insisted by the defendant in error that the people of a municipality containing 2,000 people or more, framing a charter under the provisions of article 18 of the Constitution, in exercising legislative power within such subdivision, come within the meaning of the term "Legislature" as used in section 5, art. 3, *supra*. In this we cannot concur. The legislative body of such a municipality could not enact laws providing for a mandatory primary system, providing for the nomination of all candidates in all elections for state, district, county, and municipal officers, for all political parties, including United States Senators, for to do so would be to legislate not only upon purely municipal matters, but also upon purely state matters, to wit, the nomination of all candidates in all elections for state officers.

It is clear to our mind that it is the duty of the Legislature to provide a primary system for the nomination of candidates for all municipalities, including those created under charters framed pursuant to the powers of sections 3a and 3b of article 18 of the Constitution. But there appears to be no such provision in the Constitution relating to the election of municipal officers. That being a municipal affair, it was within the power of the people of the municipality to provide laws for the election of such officers and to fix the time and place of such election. *Lackey v. State, supra.*

The Second Legislature passed an act "regulating elections in cities and towns; requiring nominations by primaries; prescribing

the time for such elections. * * *" (Sess. Laws 1909, c. 16, art. 2, p. 256.)

It is not essential for the purpose of this case to determine whether the failure to comply with the provision of said act as to the nomination of municipal officers rendered the election at which the defendant in error was voted for invalid, for, if the election of municipal officers is a municipal matter, then it was permissible under the charter to provide for the election of such officers and for the municipal machinery to hold such election and the return and canvassing and certifying of the result. That question can be determined in a direct contest. The defendant in error has the certificate from the proper municipal officer as to such result, and that is *prima facie* evidence of his title in this proceeding. If under this municipal machinery a different qualification was imposed upon voters than that provided under the Constitution, that question cannot be raised in this proceeding, but in a proper contest by *quo warranto* or some other direct proceeding such matter can be determined.

It follows that the judgment of the lower court must be affirmed.

TURNER, C. J., and DUNN, J., concur; HAYES and KANE, JJ., dissent.