COTTERAL *et al.* v. BARKER *et al., Board of Education.*

No. 3774.    Opinion Filed July 18, 1912.

Rehearing Denied August 20, 1912.

(126 Pac. 211.)

1.    **CONSTITUTIONAL LAW** — Municipal Corporations—Delegation of Legislative Power—Public Schools.    Section 3a of article 18 of the Constitution permits certain cities to frame a charter for their own government, consistent with and subject to the Constitution and laws of the state.    The act of March 28, 1910 (Sess. Laws 1910, p. 238), permits such cities, in framing a charter, to fix the number of members of their boards of education, their terms of office, the time and manner of their election, and the place for voting of persons residing in attached territory forming a part of the school district, but not a part of the city.    **Held:**

    (a)    That this act is not an unconstitutional delegation of the power conferred by article 13 of the Constitution upon the Legislature to establish and maintain a system of free public schools.

    (b)    That it is not unconstitutional because it delegates to the city the power incidentally to legislate for those persons and that territory embraced within the school district, but lying outside of the city; they having been attached by mutual agreement, and comprising a minor portion of the school district.

2.    **MANDAMUS** — Municipal Corporations—Contest of Office—Primary Elections.    Same as the second paragraph of the syllabus in Mitchell v. Carter, 31 Okla. 592, 122 Pac. 691.

3.    **MUNICIPAL CORPORATIONS** — Formation of Charter — Ward Lines—Abolition—School Districts.    In framing a charter, a city may abolish ward lines; and when it does so, the abolition is effective as to the school district, where the charter reserves the right of those living outside of the city, but within the school district, to vote at school district elections.

4.    **SAME**—School Elections—City Ward Lines—Abolition.    When the charter abolishes ward lines, provides for the election of the board of education at large, and changes the number of members of the board and their terms of office, the newly elected board succeeds at once to the rights and duties of the office, and the old members of the board are not longer entitled to hold the office.

(Syllabus by Ames, C.)

*Error from District Court, Logan County;*
*A. H. Huston, Judge.*

Action by E. O. Barker, C. O. Fish, E. G. Sharp, A. A. Beyers, and J. S. Melvin, as members of the Board of Education of the City of Guthrie, against C. F. Cotteral and R. C. Burnsdale to compel delivery to the plaintiffs of the books, records, seal, and office of said board. From a final order granting a peremptory writ of mandamus, the defendants bring error. Affirmed.

*Burford & Burford* and *Hepburn & Chappell,* for plaintiffs in error.

*Dale &·Bierer* and *Tibbetts & Green,* for defendants in error.

Opinion by AMES, C. This case involves the validity of those provisions of the Guthrie charter providing for the election of a board of education for the city of Guthrie. The case was tried on an agreed statement of facts, the substance of which is as follows: That the defendants are the president and clerk of the board of education of the city of Guthrie as it lawfully existed prior to the adoption of the Guthrie charter; that the school district involved embraces the whole city of Guthrie and a large portion of the territory adjacent thereto; that the defendants have the custody of all the property and funds of the school district, and decline to deliver the same to the plaintiffs; that the plaintiffs compose the board of education of the city of Guthrie, elected on the 13th day of June, 1911, pursuant to the provisions of the charter of the city of Guthrie, which had previously been adopted; that the plaintiffs organized and made demand upon the defendants for the property and funds of the school district, which had been declined; that those electors of the school district residing outside the limits of the city of Guthrie were not permitted to participate in the adoption of the Guthrie charter.

The provisions of the Guthrie charter relative to schools are contained in article 10 of that instrument, and are as follows:

"Section 1. The city of Guthrie, with the territory thereto attached or which may hereafter be attached for school purposes, shall constitute a separate school district.

"Sec. 2. The board of education of the city of Guthrie shall consist of six members, who shall be nominated and elected at large by the voters of said school district. The term of office of each of said members shall be six years, excepting those electe·i

at the first election held under this charter, who shall hold their office as hereinafter provided. Such election shall be held at the same time that an election is held for the election of mayor and commissioners under this charter, and six members of said board of education shall be elected. Within thirty days after such election the said members of said school board shall hold a meeting and at said meeting, which shall be their first meeting, they shall determine by lot which two shall hold office until the second Monday in April, 1913, which two shall hold office until the second Monday in April, 1915, and which two shall hold office until the second Monday in April, 1917; which determination shall be entered at length upon the journal of the proceedings of said board of education, and thereafter biennially two members shall be nominated and elected at large to fill the office for the term of six years.

"Sec. 3.   The board of education at its first meeting after the first election held under this charter shall organize by the election of a president and vice president from among its own members, and shall also elect a clerk, who shall hold their offices as provided by law.

"Sec. 4.   At the first election held under this charter there shall be nominated and elected a treasurer of the school board as provided by law, and each two years thereafter a treasurer of the school board shall be nominated and elected at the general city election as provided by law.

"Sec. 5.   Candidates for members of the board of education and treasurer of the school board, shall be nominated at a primary election, and elected at the regular election, both to be held and conducted in like manner as other primary and general elections provided for under this charter, but the names of such candidates for such offices shall be printed upon separate ballots on tinted paper, and in substantially the form provided for the election of mayor and commissioners.

"Sec. 6.   The electors residing in the territory attached to the city for school purposes lying between Division street extended south and Oklahoma avenue extended east shall vote at the polls in precinct 2, ward 1, as at present constituted; and the electors residing in the territory attached to the city for school purposes lying between Division street extended south and Oklahoma avenue extended west, shall vote at the polls in precinct 2, ward 5, as at present constituted; and the electors residing in the territory attached to the city for school purposes lying between Oklahoma avenue extended west and Division street extended north, shall vote at the polls in precinct 1, ward 4, as at

present constituted; and the electors residing in the territory attached to the city for school purposes lying between Division street extended north and Oklahoma avenue extended east, shall vote at the polls in precinct 1, ward 2, as at present constituted: Provided, that if at any time the precincts hereinbefore mentioned as polling places shall be changed, the mayor and commissioners shall have power, and are hereby required, to designate a polling place for each of the above-described divisions of attached territory in accordance with the division above made."

Under the law of the state in force prior to the adoption of the Guthrie charter, the school board consisted of two members elected from each ward of the city and two members from the attached territory. Comp. Laws 1909, sec. 8010. Under the charter, the board of education for the school district consists of six members, nominated and elected at large by the voters of the district; there being no wards remaining in the city. Section 3a, of article 18 of the Constitution (Williams' Ann. Const. Okla. [329]) provides:

"Any city containing a population of more than two thousand inhabitants may frame a charter for its own government, consistent with and subject to the Constitution and laws of this state. * * * Upon such approval it shall become the organic law of such city and supersede any existing charter and all amendments thereof and all ordinances inconsistent with it. * * *"

By the act of March 28, 1910 (Sess. Laws 1910, p. 238), it is, amongst other things, provided:

"* * * And provided, further, that in cities within the state of Oklahoma, which have heretofore adopted, or may hereafter adopt, a charter form of government, such cities shall have the power of fixing the number of members of their board of education, and their terms of office, and may, subject to the Constitution and general laws of the state, regulate the time and manner of the election of the members of the board of education, and their terms of office, within such charter cities, and shall further have power, if there be any territory outside the corporate limits of such city, to attach for voting purpose such territory to an adjoining voting precinct of an adjoining ward of such city."

The provisions of the Guthrie charter relative to schools are in substantial harmony with this statute; but the defendants, representing the old board of education, challenge the constitution-

ality of the act. The argument is made that the duty is imposed by the Constitution upon the Legislature to "establish and maintain a system of free public schools wherein all the children of the state may be educated" (article 13, sec. 1, Williams' Ann. Const. Okla. [305]), and that the other provisions of this article are directions to the Legislature to provide for separate schools and compulsory education and a uniform system of text-books, and other things constituting the public school system, and that, as these commands run to the Legislature, the Legislature cannot delegate them.

What has the Legislature done with reference to charter cities? It has authorized them, first, to fix the number of members of the board of education; second, their terms of office; third, to regulate the time and manner of their election; and, fourth, to attach adjacent territory to the appropriate voting precinct.

Under the old law, pursuant to which the defendants were elected, cities of the first class had the power to fix the number of members of the board of education, in that the board by general statute consisted of two members from each city ward, and, as the number of wards was within the power of the city council, it incidentally followed that the cities have always had the power to fix the number of members of the board of education; and therefore the provision in the act of 1910, that charter cities might fix the number of members of the board of education, was merely a change in the phraseology, and not a change in the substance, of the law.

The next power granted by the act of 1910 is to fix the term of office of the members of the board. This differed from the old law, which fixed the term of two years, and the question arises whether we shall strike down as unconstitutional the act of 1910, because it permits charter cities to fix a different term of office for the members of the school board. The duty imposed by the Constitution upon the Legislature by article 13 is to establish and maintain a system of free public schools wherein all the children of the state may be educated; to provide for compulsory attendance upon the public schools; to provide a uniform system

of text-books; and to provide for the teaching of the elements of agriculture, horticulture, stock feeding, and domestic science in the common schools in the state. It may be true that the Legislature cannot absolve itself from these grave public duties by delegating them to some other body; but it is manifest that the Legislature itself cannot perform all of these duties directly. For instance, section 6 of article 13 provides that "the Legislature shall provide for a uniform system of text-books for the common schools of the state." This is a much more vital part of our system of education than the question of the tenure of the members of any particular board of education; and it has never been questioned, so far as we know, that the Legislature could commit this important duty to the State Board of Education. Section 3 of article 13 provides: "Separate·schools for white and colored children with like accommodation shall be provided by the Legislature and impartially maintained. * * *" And yet it is the uniform practice for the Legislature, by general law, to commit this duty to the boards of education of the respective school districts, and to require them to perform the duty. The meaning of this article of the Constitution is that the Legislature shall prescribe general rules by which the public school system, as therein described, shall be maintained, and not that the Legislature shall do the things prescribed through its own members.

. In the case at bar, the Legislature has, by general rule, provided that cities adopting charters may fix the terms of office of the members of the school board; and we do not think that this is an unconstitutional delegation of legislative power, because the Legislature still reserves and exercises complete control over the public school "system" throughout the state. This system is in harmony with the general policy of the state relative to municipal charters and the larger measure of self-control guaranteed by our Legislature. One charter city may have its commissioners serve for a term of two years, another for four, and others for different terms; one may elect by wards, while another may elect at large; one may have three commissioners, while another may have five or seven.

The next provision of the act of 1910 permits charter cities to regulate the time and manner of election of the members of the board of education, but this must be done subject to the Constitution and general laws of the state; and it is argued that, pursuant to this power, article 10 of the charter, which has been previously quoted, is in conflict with section 5 of article 3 of the Constitution (Williams' Ann. Const. Okla. [47]), which provides:

"The Legislature shall enact laws providing for a mandatory primary system, which shall provide for the nomination of all candidates in all elections for state, district, county, and municipal officers, for all political parties, including United States Senators: Provided, however, this provision shall not exclude the right of the people to place on the ballot by petition any nonpartisan candidate."

It is argued that the provisions of the charter require the nomination of a nonpartisan school board, and do not provide for the nomination at the primary of candidates by political parties, and that the plaintiffs were not nominated by political parties; that they have no title to the office; and that the defendants should prevail. This question was considered by the court in the case of *Mitchell v. Carter,* 31 Okla. 592, 122 Pac. 691, where it was held, in a mandamus case involving the Guthrie charter, that the defendants could not assert the invalidity of the election under that charter. The second paragraph of the syllabus in that case is as follows:

"In a mandamus proceeding, brought by an officer elected at a municipal election held under the powers of such charter to require the turning over to him the belongings of such office by an officer claiming to hold by virtue of his election under the old charter, said relator in the mandamus proceeding holding a certificate of election by virtue of a municipal election held under the powers of such charter, the respondent will not be permitted to contest the title or the right of the relator to such office on the alleged ground of the invalidity of such municipal election on account of the failure to hold a primary election pursuant to the primary election laws passed by the Legislature to govern municipalities, or other irregularity in holding such election."

It is also urged that this act of the Legislature is void, because it permits the city proper, by the adoption of a charter, to legislate for that portion of the school district lying outside of the city limits, in providing that such cities "shall further have power, if there be any territory outside the corporate limits of such city, to attach for voting purposes such territory to an adjoining voting precinct of an adjoining ward of such city."

It has already been stated that the school district involved embraces the whole of the city of Guthrie, as well as certain attached territory and people; and it is argued vigorously that the effect of this act is to enable the city proper to legislate for those persons residing outside of the city, but constituting a part of the school district, and that this is a delegation to the municipality of the right to legislate for persons not residing therein; and this is true to a certain extent. This charter provides for the election at large of the members of the board of education, and all those persons residing upon the attached territory are permitted to vote in the election. Instead of having two members of the board elected by the attached territory, those persons therein residing participate in the election of all six members of the board. The city, in framing the charter for its own government, incidentally operates upon those persons not living in the city, but who form a part of its school district. In passing upon the constitutionality of a law enacted by the Legislature, which is a co-ordinate department of the government, the courts should resolve every doubt in favor of the validity of the law, and technical refinements, not affecting substantial rights, should not be pressed to the extent of defeating the will of the people. The school district is, of course, a separate entity from the city; but, while this is true, it is composed, to a very great extent, of the same people and of the same property; and, while it may be true that a city cannot be given the power to legislate for a county, or for the remainder of the state, where, as in this case, the school district lines have been extended by the consent of the city and of the persons residing in the attached property, we do not think that the power of the Legislature to permit the city to devise this manner of electing a school board should be

destroyed, because it incidentally affects this property which has been attached by mutual consent, where, as in this case, those persons so attached are given full power of participation in the election of the members of the board of education.

It is further objected that the charter does away with all the wards in the city, and therefore does not attach, for voting purposes, such adjacent territory forming a part of the "school district to an adjoining voting precinct or an adjoining ward of such city"; but this objection goes merely to the form, and not the substance, of the charter, as it does provide for a place at which the residents of the attached territory may vote; and if this particular language should be technically construed, it would follow that a city, in adopting a charter, could not abolish wards at all. The substance of the law is preserved, and the right of the persons residing in the attached territory to vote is protected.

The case of *Board of Education of the City of Ardmore et al. v. State ex rel. Best,* 26 Okla. 366, 375, 109 Pac. 563, 567, does not determine the invalidity of this charter, because in that case the statute of 1910 was not considered in connection with the Ardmore charter, and the court in that case says:

"As the Legislature of this state did not see fit to confer on cities of the class entitled to frame charters for their own government any power to legislate on matters pertaining to the public school system of the state, it follows that the attempt on the part of the city of Ardmore by its charter to vest such authority in another board than that provided by the general law must fail."

Finally, it is argued that the provision in the act of 1910, "provided, further, that the officers and members of boards of education in cities of the first class shall hold their offices for the full term to which they were elected," means that the old school board must hold until the expiration of their terms, and that the new charter board cannot take office until that time, which would be two years after they were elected under the charter. The act of 1910 says, "Section 5836, article 7, chapter 73, of the Statutes of Oklahoma 1893, be and the same is hereby amended to read as follows," and then sets up the statute as amended. The act of 1893, which is here amended, is then set up in full, and

to it is added the proviso allowing cities adopting a charter form of government to provide for certain control of their schools by the charter. The original section 5836, St. Okla. 1893, is as follows:

"A separate ballot box for school purposes shall be provided by the city clerk and ballots for school officers deposited therein; it shall be the duty of the city clerk to prepare suitable places for holding such elections. At each annual city election there shall be a board of education, consisting of one member from each ward, elected by the qualified voters thereof, who shall hold his office for a term of two years, and until his successor is elected and qualified: Provided, that.no member of the board of educacation shall be a member of the council, nor shall any member of the council be a member of the board of education: Provided, that the officers and members of boards of education in cities .of the first class shall hold their offices for the full term to which they were elected."

In the act of 1910, immediately following the original act, and without even a period, is the following:

"And provided further, that in cities within the state of Oklahoma, which have heretofore adopted, or may hereafter adopt, a charter form of government, such cities shall have the power of fixing the number .of members of their board of education, and their terms of office, and may, subject to the Constitution and general laws of the state, regulate the time and manner of the election of the members of the board of education, and their terms of office, within such charter cities, and shall further have power, if there be any territory outside the corporate limits of such city, to attach for voting purpose such territory to an adjoining voting precinct of an adjoining ward of such city."

The reason why the act of 1893 contained a provision that the members of the boards of education should hold their offices for the full term to which they were elected may be ascertained by an inquiry into the law in force prior to the act of 1893. Under the Statutes of 1890, secs. 6405 and 6406, it was provided that in cities the school board should be composed of one member to be elected from each ward; those serving from odd-numbered wards being elected one year for a term of two years, and those serving from the even-numbered wards being elected the next year for a term of two years. By the act of 1893, it was provided

that the board of education should consist of two members from each ward, one of whom should be elected one year and the other the next year. As the old board was organized on the same basis as the new, the only change being that two members should serve from each ward, instead of one, the proviso was inserted that those members who had already been elected should serve for the full term for which they were elected. The Legislature of 1910, in authorizing charter cities to fix the number of members of the board of education, their terms of office, and to regulate the time and manner of election, did so by an amendment to the act of 1893, instead of by an original act; and in amending the act of 1893 they brought it forward as an entirety, inserting after it a proviso relative to charter cities.

In this case the charter abolished wards entirely, changed the number of members of the board of education, changed the length of their term, and substituted a different method of constituting the board. The new method being inconsistent with the old, and the proviso permitting it being later in point of time, and the reason for the proviso as it existed in 1893 not applying in 1910, we do not think the Legislature intended to suspend by this proviso the operation of the charter for two years. In fact, at the expiration of one year, the terms of office of one-half the members of the old board would expire; and, as members of the new board were not elected from the same districts or in the same number, there would be no method of amalgamating the newly elected members with those holding over, and the result would be that one-half of the old board would continue for another year in the exercise of the functions of the entire board, and by the expiration of their term one-third of the newly elected board would reach the expiration of their term, so that their term of office would expire before they had been permitted to commence the discharge of their duties. To construe this act in this way would create confusion, and would not accomplish what we think was the purpose of the Legislature.

We think the judgment of the trial court should be affirmed. By the Court: It is so ordered.