Dear Senator Littlefield,
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
1. If an incumbent school board member fails to receive 15continuing education credits during a full term of office asrequired by 70 O.S. Supp. 2000, § 5-110.1[70-5-110.1] , is that incumbentschool board member eligible to file for, and be elected to, anadditional term of office?
2. If a county election official has certified, as the winner ofa school board election, an incumbent who did not receive therequired continuing education hours as required by 70 O.S.Supp. 2000, § 5-110.1[70-5-110.1] in his previous term of office, is thelocal school board required by law to seat that member?
3. Does 51 O.S. 1991, § 8[51-8] require a local board of educationto declare vacant such member's seat for one of the reasons setforth in that statute?
4. If such a board member is seated, is subsequent action takenby the school board of education legitimate?
 I. Introduction
¶ 1 Once elected to a local board of education, a board member must undergo certain training. After initial election, the board member is required to take 12 hours of instruction on certain education issues, "including school finance, Oklahoma education laws, and ethics, duties and responsibilities of district board of education members." 70 O.S. Supp. 2000, § 5-110[70-5-110](A). After re-election, the board member is required to complete six hours of instruction dealing with changes in school law, "particularly changes in the areas" mentioned above. Id. § 5-110(B).
 II. Ability To Be Reelected
¶ 2 But that is not the end of the board member's education requirement. Your question centers on 70 O.S. Supp. 2000, §5-110.1[70-5-110.1]. That statute reads in pertinent part:
 A. In addition to the requirements of Section 5-110 of this title, every member of a school district board of education elected to a full term of office shall be required to attend a minimum of fifteen (15) hours of continuing education during any full term of office of the member. The continuing education courses, local and state workshops, seminars, conferences, and conventions which shall satisfy the continuing education requirement shall be held within this state and shall be approved jointly by the State Department of Education and the State Department of Vocational and Technical Education.
. . . .
 D. Failure by a board member to satisfy the continuing education requirements of this section shall result in the ineligibility of the member to run for reelection to the school district board of education.
Id. (emphasis added). The statute is specific in its remedy. It states that a member who does not fulfill the education requirements of Section 5-110.1(A) cannot run for reelection to the school district board of education.
¶ 3 But that does not end the analysis. Although the statute is specific about the ability to run for reelection, it does not address what happens if the incumbent does run for reelection. Put another way, the statute does not state the member cannotoccupy the office if he files for reelection and is reelected without a legal challenge. The Legislature has been able to state the difference between being able to hold an office and being able to run for reelection to an office. Cf. 19 O.S. 1991, §215.2[19-215.2] (emphasis added) (setting forth qualifications for the office for district attorney, stating that when certain qualifications are met, one "shall be eligible to hold the office of district attorney"). Given that the Legislature knows the difference between running for reelection and holding office, we must presume that the Legislature said what it meant and meant what it said. See also Stuart v. King, 217 P.2d 540, 544
(Okla. 1950) (quoting Bode Adm'x, v. Welch, 29 Ohio St. 19, 21
(1875)) (an Ohio case dealing with the right of certain persons to appeal, the Court said: "If the Legislature had meant the interest of an abutting property owner, when it said `any person interested may appeal,' it could easily have used those words.").
¶ 4 Given that 70 O.S. Supp. 2000, § 5-110.1[70-5-110.1](D) only applies to running for reelection for the office, not occupying it, we next examine how one can be prevented from running for an additional term.
¶ 5 Election laws provide for periods during which protests may be lodged against candidates. The law provides:
 Any candidate, hereafter referred to as petitioner, may contest the candidacy of any other candidate for the same office, hereafter referred to as contestee, by filing a written petition with the secretary of the election board with whom said candidate filed the declaration of candidacy. In the event only one candidate files for an office, a petition contesting the candidacy may be filed by any registered voter who is eligible to vote for the candidate.
26 O.S. Supp. 2000, § 5-118[26-5-118]. However, such a petition must be filed "no later than 5:00 p.m. on the second day following the close of the filing period." 26 O.S. 1991, § 5-119[26-5-119]. The Oklahoma Supreme Court held there are no common law pre-election remedies to challenge the qualifications of a candidate for public office, and that the Legislature has provided in Section 5-118 the exclusive method to contest the candidacy of a candidate. Coleman v. Sequoyah County Election Bd.,762 P.2d 935, 936 (Okla. 1988). Consequently, unless a protest is filed within the time allotted by law, a candidate, even though ineligible, may run for and be elected to office.
¶ 6 This was discussed at length in Rogers v. State ElectionBd., 533 P.2d 621 (Okla. 1974). There, the petitioner sought a writ of mandamus to the State Election Board requiring them to cancel a certificate of election issued to his opponent, and to issue the petitioner a certificate. In the alternative, the petitioner sought an original action in the nature of quo warranto to determine he was the lawful holder of the office in question. As a basis for his request, the petitioner alleged the successful candidate had committed fraud by falsely swearing her residence was within a certain precinct. In fact, the winner had on successive days filed inconsistent statements concerning her residence. One day she swore in her "Notification and Declaration" for the Senate seat that she lived at a residence within the district; however, on the next day she registered with the county election board and swore she lived at a different address, which happened to be outside the district. In denying the petitioner's requested relief the Court reviewed past holdings, strictly adhering to the allowable protest period.Id. at 623. One case cited by Rogers was Wickersham v. StateElection Bd., 357 P.2d 421, 424 (Okla. 1960), which stated:
 By enacting [the analogous statute in effect at that time, which has been recodified], the Legislature, in our opinion, clearly indicated that it intended that the matter of the eligibility of a candidate for an office be first considered by the Election Board with which the candidate filed his notification and declaration and not by the courts; that an objection or protest to such notification and declaration be filed in all instances and that a hearing thereon be held at an early date and before an election is held. It is apparent that such construction would serve to avoid (a) electors voting for a candidate whom they thought was eligible for the office which he sought but who in fact was not eligible; (b) candidates expending time and money campaigning for an office which they believe they are qualified and eligible to hold but who are not in fact eligible or qualified for the office; and (c) the state expending revenue in conducting an election relative to said office. Our construction is also in keeping with the proposition that the right to contest an election may be lost by laches or inexcusable delay.
Id. (citations omitted).
¶ 7 Rogers then concluded:
 The exclusive method to challenge, question or object to the" legality or regularity of a notification and declaration" is provided by [the statute in effect at that time].The action of the County Election Board in placing the applicant's name on the ballot as a candidate for the office is in the nature of a judgment of that body in its semi-judicial capacity and that judgment cannot be collaterally attacked. Any person desiring to raise the question of eligibility of a proposed candidate may do so under the provisions of said statute. Not having done so, he cannot, thereafter, question that final decision of the board.
 We can only conclude that Petitioner's failure to follow the statutory provisions for contesting his opponent's candidacy by timely filing an objection to the notification and declaration, bars relief to Petitioner even though Helm's notification may, arguendo, have been fraudulent.
Rogers, 533 P.2d at 623 (quoting Murphy v. Darnell,268 P.2d 860, 861 (Okla. 1954)). As to petitioner's contention that the writ of quo warranto was an appropriate relief (based on the fact the winner committed fraud) Rogers noted that a conviction would be necessary under the statute cited by the petitioner before the office could be forfeited. Rogers then concluded:
 In essence, the strength of the campaign laws in this State depends upon reasonable laws being passed by the Legislature and enforcement of those laws by the prosecutors. Our three branch system of government does not permit the courts to fill the chasm left by either the laws as passed, or the failure by prosecutorial authorities to enforce those laws.
Id. at 624. Therefore, the answer to your first question is as follows: Although a member who fails to receive 15 continuing education credits during his or her full term of office, as required by 70 O.S. Supp. 2000, § 5-110.1[70-5-110.1], is ineligible to run for reelection, he or she may hold the office if he or she runs for it without a lawful challenge and is reelected to that office.
 III. Seating An Ineligible Member
¶ 8 Your second question asks whether, once a county election board has certified as winner of an election an incumbent who previously failed to get his or her continuing education hours under 70 O.S. Supp. 2000, § 5-110.1[70-5-110.1], the local school board is required by law to seat that member. The answer is yes.
¶ 9 Decades ago the Supreme Court established the rule "that a party having a due and proper certificate of election to an office is prima facie entitled to qualify and assume the duties of such office." O'Brien v. Gassoway, 256 P. 929, 932 (Okla. 1927). Once so qualified, removal must be by an action in the nature of quo warranto.[1] Id. See also State ex rel. Lovev. Smith, 142 P. 408, 410 (Okla. 1914) ("[I]f the certificate is regular and valid upon its face, the court, in a mandamus proceeding, will accept it as conclusive, and will only go behind such certificate in ascertaining error or irregularities in a proceeding in the nature of a contest or quo warranto, involving the title to the office.").
¶ 10 Put another way, when an individual is holding office without right or title to the office, the appropriate method of removal is an action in the nature of quo warranto. State exrel. Stuart v. Rapp, 632 P.2d 388, 389 (Okla. 1981). An action in the nature of quo warranto may be brought in the following cases:
 1st, When any person shall usurp, intrude into, or unlawfully hold or exercise any public office, or shall claim any franchise within this state or any office in any corporation created by authority of this state;
 2nd, Whenever any public officer shall have done or suffered any act which, by the provisions of law, shall work a forfeiture of his office;
 3rd, When any association or number of persons shall act within this state as a corporation without being legally incorporated;
 4th, When any corporation does or admits acts which amount to a surrender or a forfeiture of its rights and privileges as a corporation, or when any corporation abuses its power or intentionally exercises powers not conferred by law;
 5th, Where any corporation claims, by virtue of a congressional grant, any of the public lands or Indian lands to which the Indian title or right of occupancy has been extinguished;
 6th, For any other cause for which a remedy might have been heretofore obtained by writ of quo warranto, or information in the nature of quo warranto.
12 O.S. 1991, § 1532[12-1532]. An action in the nature of quo warranto may be filed in the Supreme Court[2] or in the district court. Id. § 1532(para. 1). The action may be filed by the Attorney General or a district attorney on behalf of the State or may be filed by a person claiming an interest in the office. 12O.S. 1991, § 1533[12-1533].
¶ 11 However, as noted above, a school board member who fails to receive 15 continuing education credits during his or her full term of office as required by 70 O.S. Supp. 2000, § 5-110.1[70-5-110.1](A) is ineligible to run for reelection. Id. § 5-110.1(D). However, if the member runs for reelection, survives the protest period and is reelected he or she may hold the office as Section 5-110.1(D) prohibits only the running for, not the holding of
the office. Given that the school board member did not "usurp, intrude into, or unlawfully hold or exercise" the office, an action in the nature of quo warranto is not available under 12O.S. 1991, § 1532[12-1532](1st).
¶ 12 Nor is an action in the nature of quo warranto under Section 1532 (6th) available here. Under common law, the writ of quo warranto "is addressed to preventing a continued exercise of authority unlawfully asserted, not to a correction of what already has been done under it or to a vindication of private rights." Johnson v. Manhattan Ry. Co., 289 U.S. 479, 502
(1933). See also First Nat'l Bank v. Missouri ex rel. Barrett,263 U.S. 640, 660 (1924) (discussing the use of quo warranto to determine whether a national bank was acting in excess of its charter); Int'l Harvester Co. v. Missouri ex rel. AttorneyGeneral, 234 U.S. 199, 202-03 (1914) (quo warranto used to exclude a manufacturing company from the corporate rights, privileges, and franchises exercised or enjoyed by it under the laws of a state based on the perversion, usurpation, abuse, and misuse of franchises); Terrett v. Taylor, 13 U.S. 43, 51 (1815) ("A private corporation created by the legislature may loose [sic] its franchises by a misuser or a nonuser of them; and they may be resumed by the government under a judicial judgment upon a quo warranto to ascertain and enforce the forfeiture. This is the common law of the land, and is a tacit condition annexed to the creation of every such corporation."). None of the common-law purposes of the writ of quo warranto is applies here.
¶ 13 It is for this same reason in this case that quo warranto cannot be used "[w]henever any public officer shall have done or suffered any act which, by the provisions of law, shall work a forfeiture of his office[.]" 12 O.S. 1991, § 1532[12-1532](2nd). As noted above, the issue under 70 O.S. Supp. 2000, § 5-110.1[70-5-110.1](D) is whether the incumbent could run for reelection to the office, not whether he could hold title to it once reelected. The Oklahoma Supreme Court has "recognize[d] the principle that where title to public office becomes an incidental issue in thecase, and the action is not between claimants to the office, such issue may be tried in mandamus." City of Tulsa v. DistrictCourt, 51 P.2d 511, 513 (Okla. 1935) (emphasis added). In that case, a police officer named Jones had been discharged from duty and replaced by another. He sought a writ of mandamus, not an action in the nature of quo warranto. In response, the city filed an application for a writ of prohibition to prohibit the district court from hearing the mandamus action. After making the observation that the title to the office was incidental, the Court continued:
 For purposes of analogy we may suppose that Jones was elected to the office in question, and held the certificate of election thereto executed by the proper authorities. If these same authorities should later take over the office and operate it th[r]ough other parties, what would be Jones' remedy? Could he recover possession of the office by mandamus, or would he be compelled to resort to quo warranto to test the question of title as between himself and those persons presuming to exercise the official functions of the office? These questions have been answered to some degree by the territorial court in Ewing v. Turner, [35 P. 951, 954 (Okla. 1894)], as follows: "It is so well settled that mandamus will not lie to try the title to an office that the subject needs no discussion here or elsewhere. If the title is not involved, and the aid of the writ of mandamus were sought merely to obtain possession of the effects, moneys, and official belongings of the office, a different question would be presented.
 . . . And while it is true that quo warranto is the only method of determining disputed questions of title to public offices, yet a mere groundless assumption of an election on the part of the respondent, and a pretended exercise of the functions of the office de facto, will not deter the court from granting the mandamus." How would the question of "groundless assumption of an election on the part of the respondent" be determined? Would not the court look first to the claim of the petitioner? From an examination of the cases involving this question it appears that if the petitioner has a clear legal right to the thing demanded and his claim is substantially free from doubt, he is entitled to the writ of mandamus. Ross v. Hunter, 53 Okl. 423, 157 P. 85. If the court will not, in a mandamus action, examine into the title of the petitioner to any extent in such cases, such action on the part of the court would be equivalent to assuming no jurisdiction in the matter.
 However, if the petitioner's certificate of election is valid upon its face, and the validity thereof is not questioned, the court will grant the writ. If the respondent should set up as a defense that the petitioner's term had expired, the court would then determine that question from the provisions contained in the certificate of election and by applying the laws governing the tenure of that particular office.
 In the present case Jones' appointment was admittedly legal. This appointment is analogous to a certificate of election. His appointment under the city charter was to extend until legally discharged. That provision in the city's law relative to discharge of such officers became an integral part of his appointment and remained so until repealed. To determine whether or not he was legally discharged would involve no different character of issue than to determine the tenure of office under a certificate of election. The court must determine the question as to when, if ever, the appointment expired.
 The issue involved in determining the expiration of an official appointment is not the character of issue referred to in the rule pertaining to trial of title to public office as expressed in State ex rel. Shepard v. Crouch, 31 Okl. 206, 120 P. 915, 916, and other cases, as follows: "When the question of the right or title to an office is put in issue, mandamus is not the form of action, the appropriate remedy being an action in the nature of a quo warranto." The validity of the title to the office is not in issue in this case. The issue is, or will be, whether or not Jones' appointment has expired. That question is for the district court to hear and determine.
Id. at 513 (emphasis added). In the scenario you pose, the question of the right or title to office is not at issue; the title to the office is incidental. Since a proceeding in the nature of quo warranto is intended to determine title to an office, this second ground cannot be used either.
¶ 14 Therefore, the answer to your second question is as follows: If the person elected has a due and proper certificate of election to an office, that person is prima facie entitled to qualify and assume the duties of such office, and the Board cannot refuse to seat him. Because 70 O.S. Supp. 2000, §5-110.1[70-5-110.1](D) prohibits only the running for reelection of — and not the holding of title to — the office, an action in the nature of quo warranto is not available. 12 O.S. 1991, §1532[12-1532].[3]
 IV. Duties of Local Board
¶ 15 Your third question asks whether the local board of education must declare an ineligible member's seat vacant under the authority of 51 O.S. 1991, § 8[51-8] (Second), because — by not getting the continuing education hours as required — the member failed to qualify for office as required by law. Although the answers to the above questions show that an incumbent may hold office even if he or she failed to complete his or her continuing education hours, this question is not moot, and is being answered based on the possibility a member could be removed under 51 O.S.1991, § 8[51-8] (Fifth). The statute reads:
 Every office shall become vacant on the happening of any one of the following events before the expiration of the term of such office:
First. The death of the incumbent or his resignation.
 Second. His removal from office or failure to qualify as required by law.
 Third. Whenever any final judgment shall be obtained against him for a breach of his official bond.
 Fourth. Ceasing to be a resident of the state, county, township, city or town, or of any district thereof, in which the duties of his office are to be exercised or for which he may have been elected or appointed.
 Fifth. Conviction in a state or federal court of competent jurisdiction of any felony or any offense involving a violation of his official oath; provided, that no conviction, as a cause of vacation of office, shall be deemed complete so long as an appeal may be pending, or until final judgment is rendered thereon.
 Sixth. Upon entering of a plea of guilty or nolo contendere in a state or federal court of competent jurisdiction for any felony or any offense involving a violation of his official oath.
 The fact by reason whereof the vacancy arises shall
be determined by the authority authorized to fill such vacancy.
51 O.S. 1991, § 8[51-8] (emphasis added).
¶ 16 "`Shall' is ordinarily construed as mandatory." OspreyL.L.C. v. Kelly-Moore Paint Co., 984 P.2d 194, 199 (Okla. 1999). Therefore, the office must become vacant when a school board member falls into one of the above categories. Section 13A-105 of Title 26 states that a candidate running for a school board must sign a declaration of candidacy, and also must sign an attachment to that declaration listing the requirements of a candidate for election or reelection to a school board as set forth in, among other sections, 70 O.S. Supp. 2000, § 5-110.1[70-5-110.1],
and the candidate must either swear or affirm that he or she is eligible to run for such office or serve in such office if elected. Therefore, the official could be convicted of a felony — and thus lose the office — if a final criminal conviction for making a false declaration, under oath, was sustained. See,e.g., 21 O.S. 1991, § 491[21-491] (defining perjury).
¶ 17 There is nothing in the school code requiring the board of education to institute the removal proceedings; however, 51 O.S.1991, § 8(para. 8) states that the reason for the vacancy "shall be determined by the authority authorized to fill such vacancy." Under the School Code, the entity authorized to fill the vacancy is generally[4] the board of education. 26 O.S. Supp 2000,§ 13A-110[26-13A-110](A). Therefore, since the board is the appointing authority, it must under this law determine whether there are facts showing a member has had a criminal conviction in a court of law for a felony or any offense involving a violation of his official oath — and that an appeal from that conviction has been completed — thus necessitating a vacancy in the office.
¶ 18 Given that the board must make a factual determination whether an office is vacant, the question then arises whether there is a remedy if a board refuses to do so. The answer lies with a writ of mandamus.
¶ 19 The function of a writ of mandamus is set forth in 12O.S. 1991, § 1451[12-1451], which provides that a writ of mandamus may issue "to any . . . board . . . to compel the performance of any act which the law specially enjoins as a duty, resulting from an office, trust or station[.]" Id. "The general rule for a writ of mandamus to issue is that the party seeking the writ must have a clear legal right to the relief sought; the respondent must have a plain legal duty in which the exercise of discretion is not implicated; and it may be issued only in situations where there is no plain and adequate remedy in the ordinary course of the law." Colclazier v. State ex rel. Okla. Indigent Def. Sys.Bd., 951 P.2d 622, 624 (Okla. 1997) (citing Okla. Gas Elec.v. Dist. Court, Fifteenth Judicial Dist., 784 P.2d 61, 63
(Okla. 1989)). Also, disputed factual questions may be litigated and determined in a mandamus action. State ex rel. State Bd. ofPub. Affairs v. Principal Funding Corp., 519 P.2d 503, 507
(Okla. 1974), overruled on other grounds by 542 P.2d 503
(Okla. 1975).
¶ 20 As noted above, the school board must declare an office vacant upon the happening of one of the enumerated events in 51O.S. 1991, § 8[51-8]. Therefore, there is no discretion involved and mandamus is an appropriate action.
¶ 21 Having established that a Board must determine whether an office is vacant, we now turn to whether there are procedures that dictate how that determination is reached.
¶ 22 The State Supreme Court has addressed requirements which must be met before an office can be declared vacant. In Nesbittv. Apple, 891 P.2d 1235 (Okla. 1995), Petitioner sought to have an official removed through a proceeding in the nature of quo warranto. In support of his contention, Petitioner sought to prove that the person who had formerly held the office was not legally entitled to the position because that person had not taken the oaths of office as required by the Oklahoma Constitution and statutes. The Court disposed of this assertion by observing that the then-governor had not declared the office vacant by virtue of the previous official's having not taken the oaths. The Court then explained:
 This present factual dispute is important because as we read 51 O.S. 1991, § 8[51-8], before Governor Walters could find the fact of a vacancy in the office of Corporation Commissioner in this situation on the basis Mr. Watts failed to qualify for the office because of failure to file the required oaths in a timely fashion, it was incumbent on Governor Walters to afford Mr. Watts an opportunity for some type of minimal due process on the disputed factual issue to contest such a claim. In that the record is undisputed no such opportunity was afforded by Governor Walters, in our view, the dictates of minimal due process and fundamental fairness lead to the conclusion that no lawful or legitimate factual determination of vacancy could have been found by Governor Walters (assuming one was actually made) concerning any issue involved with Mr. Watts' filing of the oaths prior to Governor Walters leaving office on January 9, 1995.
 In the case of Worley v. State ex rel. Asbill, 558 P.2d 430, 433-434 (Okla.Ct.App. 1976), Division 1 of the Court of Appeals, seemed to recognize that in order for a declaration of vacancy in office to be declared in conjunction with § 8, due process was mandated. This view was consistent with the case of State ex rel. Blankenship v. Freeman, 440 P.2d 744, 756-757 (Okla. 1968), where we recognized that even though a certain provision of the Oklahoma Constitution was self-executing as to its prohibition on Corporation Commissioners in regard to holding an interest in certain regulated companies, we held that where contested issues of fact are raised, a litigant whose office is sought to be declared vacant must be granted an opportunity to litigate in a proper judicial forum, all fact issues which may be involved. We further recognized in Freeman that where vacation or forfeiture of office was based on a violation of the general constitutional oath found at OKLA. CONST. art. 15, § 1, the language of OKLA. CONST. art. 15, § 2, required that a commissioner had to have been convicted in a court of competent jurisdiction before we had jurisdiction to make a judicial determination of forfeiture or vacancy in the office. Freeman, 440 P.2d at 753-754.
 Although Freeman did not involve a construction of § 8 in regard to the failure of the appointing authority to initially determine the facts that create a vacancy after minimal due process, we believe Freeman does stand for the proposition that due process is implicated in decisions to find a vacancy or forfeiture in a public office. The reasoning of Freeman, coupled with the legislative directive in § 8 that the appointing authority is supposed to initially find the facts by reason of which a vacancy occurs, leads to the conclusion that we presently have no authority to make the factual determination in the first instance.
Id. at 1240-41 (footnote omitted). Therefore, under this holding, a local school board cannot under Section 8 of Title 51 declare vacant the ineligible member's position without affording the office holder an opportunity for due process — which, at a minimum, constitutes notice and a full and fair opportunity to be heard (Patel v. OMH Med. Ctr., Inc., 987 P.2d 1185, 1201
(Okla. 1999)) — to determine whether the member had a final conviction of a felony or an offense involving a violation of the oath.[5] What would constitute due process in a particular situation constitutes a question of fact, beyond the scope of an Attorney General Opinion. 74 O.S. Supp. 2000, § 18b[74-18b](A)(5).
 V. Actions Taken By Board With Questioned Member
¶ 23 In your last question you ask what would happen if an "ineligible" incumbent is seated. Specifically, you wish to know whether actions taken by the board, while that incumbent was seated, would be legitimate.
¶ 24 In Hatfield v. Jimerson, 365 P.2d 980 (Okla. 1961), plaintiffs questioned the validity of official acts of school board members on the ground that they had not qualified for the office after their election by taking the oath of loyalty. The Court observed that, even assuming the validity of plaintiffs' contention:
 [S]till their acts as board members would be those of de facto officers. In State of Oklahoma ex rel. Tayrien v. Doggett, Okl.Cr., 296 P.2d 185, 186, we [sic] stated:
 "An `officer de facto' is one whose acts, though not those of a lawful officer, the law, upon principles of policy and justice, will hold valid so far as they involve the interest of the public and third persons, where the . . . functions of the office are exercised by one who was in the actual possession of it under color of title."
And quoted with approval as follows:
 "The result of the authorities is that title of a person acting with color of authority, even if he be not a good officer in point of law, cannot be collaterally attacked."
Id. at 982. See also Ajax Contractors, Inc. v. Myatt,424 P.2d 30, 33-34 (Okla. 1967) (same holding concerning councilman who held office illegally).
¶ 25 The discussion in this section is based on the premise that the official holds the office illegally. However, as we determined above, an incumbent who fails to obtain his or her continuing education hours may be lawfully elected if no election challenge occurs within the time allowed by law; the member would therefore not be an officer de facto, but rather an officer de jure. Therefore, the answer to your question is that actions taken by the board would be valid, even if the incumbent failed to get the continuing education hours required by 70 O.S. Supp.2000, § 5-110.1[70-5-110.1].
 ¶ 26 It is, therefore, the official Opinion of the AttorneyGeneral that:
1. A. If an incumbent member of a local board of education failsto satisfy the 15-hour continuing education requirement duringany full term of office as required by 70 O.S. Supp. 2000, §5-110.1(A), that board member is ineligible to run forreelection. 70 O.S. Supp. 2000, § 5-110.1(D).
B. If an incumbent school board member who fails to satisfy the15-hour continuing education requirement during any full term ofoffice as required by 70 O.S. Supp. 2000, § 5-110.1(A),nonetheless runs for reelection and his or her ability to run forreelection under 26 O.S. Supp. 1994, § 5-118[26-5-118] is notsuccessfully challenged within the time for protest allowed bylaw, the member is eligible to hold the office if he or she isreelected.
2. If a reelected school board member who fails to satisfy the15-hour continuing education requirement required by 70 O.S.Supp. 2000, § 5-110.1(A) possesses a due and proper certificateof election to an office, the party is prima facie entitled toqualify and assume the duties of such office, and the Boardcannot refuse to seat him or her.
3. Under 51 O.S. 1991, § 8, a local school board has a dutyto make a factual determination whether an office is vacantbecause a member has a final conviction of a felony or an offenseinvolving his or her official oath. If a board refuses to makesuch a determination, it can be forced to do so by a writ ofmandamus. However, the board cannot declare vacant the ineligibleincumbent's position without affording the office holder anopportunity for due process, which at a minimum includes noticeand an opportunity to be heard. What would constitute due processin a particular situation constitutes a question of fact, beyondthe scope of an Attorney General Opinion. 74 O.S. Supp. 2000, §18b(A)(5).
4. Even if a re-elected incumbent school board member were tohold the office illegally, actions taken by the board would bevalid.
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
DAN CONNALLY ASSISTANT ATTORNEY GENERAL
[1] We say "in the nature of quo warranto" because technically the writ of quo warranto at common law has been abolished (see12 O.S. 1991, § 1531[12-1531]), and replaced by statutes to allow relief by civil action. See 12 O.S. 1991, §§ 1531[12-1531] — 1538. For a history of the writ of quo warranto and its evolution from a writ in a civil proceeding to an information in the nature of quo warranto in a criminal proceeding, then back to a civil proceeding, see Ames v. Kansas ex rel. Johnston, 111 U.S. 449,460 (1884).
[2] Although this venue is not available in the situation you pose. The Supreme Court would exercise original jurisdiction only when the issue involved is one of general or statewide concern, as opposed to issues of purely private or local concern. Rapp,632 P.2d at 389.
[3] There is also the question whether a writ of mandamus would succeed here. There is no question a school board member has a clear legal duty to obtain the continuing education hours under the statute; however, the statute does not set forth a specified time during which the school board member must complete the hours; it only requires the member to attend "during any full term of office." 70 O.S. Supp. 2000, § 5-110.1[70-5-110.1](A). Cf. 70O.S. Supp. 2000, § 5-110[70-5-110](A) (requiring that "within fifteen (15) months of election or appointment as a member of the district board of education, such member will complete at least twelve (12) hours of instruction" on certain issues). As a result of this lack of time during which a member must attain his hours under Section 5-110.1(A), it would be theoretically possible the member could satisfy the statutory requirements by attaining these hours during the very last days of his or her office; or, if it were theoretically impossible owing to time constraints, the writ would not work, as it cannot force someone to do that which is impossible.
[4] We say "generally," because there is an exception to the ability of the board to appoint a replacement. Subsection "C" of26 O.S. Supp. 2000, § 13A-110[26-13A-110] mandates that in districts having a chair of the board elected by the people of the district, "a vacancy in the office of the chair of the board shall be filled by the vice_chair who shall continue to serve as the board member for the board district for which elected," and that the board "shall call a special election to elect a chair of the board to serve the remainder of the unexpired term." However, the ability of a district to have a position as chair of the board is limited to districts with an average daily membership of over 30,000 students. 70 O.S. Supp. 2000, § 5-107B[70-5-107B](A). We understand that the district giving rise to this question does not fall into that category.
[5] In light of this holding, we need not address the question whether an incumbent committed perjury when he or she swore or affirmed in the declaration of candidacy that the requirements of70 O.S. Supp. 2000, § 5-110.1[70-5-110.1] were met, as is required in 26O.S. Supp. 2000, § 13A-105[26-13A-105]. Under either Nesbitt or a mandamus action, some degree of due process and a hearing would have to be observed to determine whether a final conviction of a felony had in fact occurred.